[844 NE2d 1155, 811 NYS2d 633]

Albert Stephenson et al., Appellants, v Hotel Employees and
Restaurant Employees Union Local 100 of the AFL-CIO
et al., Respondents.

Argued January 3, 2006; decided February 16, 2006

**POINTS OF COUNSEL**

*Kramer & Dunleavy LLP,* New York City (*Denise M. Dunleavy* and *Lenore Kramer* of counsel), and *Pollack Pollack Isaac & De Cicco* (*Brian J. Isaac* of counsel) for appellants. The Appellate Division's decision shows that the majority engaged in improper issue determination and issue resolution to reverse the trial court and a duly constituted jury verdict and dismiss a case that presented multiple material questions of fact; the decision violated black letter precedent from the appellate courts, especially in an age discrimination case, where the frequently subtle intentions and actions of defendants require careful holistic scrutiny of the evidence, and inferences can be sufficient to establish discriminatory intent. (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176; *Matter of Holland v Edwards,* 307 NY 38; *State Div. of Human Rights v Kilian Mfg. Corp.,* 35 NY2d 201; *NLRB v Express Publishing Co.,* 312 US 426; *St. Mary's Honor Center v Hicks,* 509 US 502; *McDonnell Douglas Corp. v Green,* 411 US 792; *Texas Dept. of Community Affairs v Burdine,* 450 US 248; *Postal Service Bd. of Governors v Aikens,* 460 US 711; *National Org. for Women v State Div. of Human Rights,* 34 NY2d 416; *Matter of Pace Coll. v Commission on Human Rights of City of N.Y.,* 38 NY2d 28.)

*Pryor Cashman Sherman & Flynn LLP,* New York City (*Milton Mollen, Vincent F. Pitta, Joseph J. Lynett* and *Jane Lauer Barker* of counsel), for respondents. Defendants are entitled to judgment as a matter of law because plaintiffs utterly failed to prove that the reason that they were discharged—the union's undisputed receipt of information linking them to organized

crime—was a pretext for age discrimination. (*Cohen v Hallmark Cards*, 45 NY2d 493; *Silverstein v Harmonie Club of City of N.Y.*, 173 AD2d 378; *Ferrante v American Lung Assn.*, 90 NY2d 623; *Reeves v Sanderson Plumbing Products, Inc.*, 530 US 133; *Hazen Paper Co. v Biggins*, 507 US 604; *McDonnell Douglas Corp. v Green*, 411 US 792; *St. Mary's Honor Center v Hicks*, 509 US 502; *Forrest v Jewish Guild for the Blind*, 3 NY3d 295; *Loschiavo v Port Auth. of N.Y. & N. J.*, 58 NY2d 1040; *Price Waterhouse v Hopkins*, 490 US 228.)

**OPINION OF THE COURT**

G.B. SMITH, J.

The issue in this age discrimination case is whether the Appellate Division erred in setting aside a jury verdict and dismissing the complaint. The defendants presented valid reasons for termination other than age discrimination and plaintiffs failed to prove that those reasons were pretextual. Accordingly, the evidence was sufficient to support the determination, and the order of the Appellate Division should be affirmed.

Facts

In 1983, plaintiff Albert Stephenson began working in the restaurant industry and subsequently worked as a union organizer and business agent. On June 11, 1992, at the age of 63, he was terminated by the defendants Local 100 and Hotel Employees and Restaurant Employees International Union (HEREIU). On June 17, 1985, plaintiff Leroy Hodge was hired as a union organizer for the Hotel Employees Union Local 100 and later became a business agent. On June 11, 1992, Hodge was terminated at the age of 55 by the defendants.

In 1992 and 1993, Local 100 was under investigation by the FBI and the United States Attorney for the Southern District of New York for numerous civil violations, including bribery and kickbacks to organized crime families and their associates. On October 22, 1992, the United States Attorney's office in the Southern District of New York filed a civil complaint against Local 100 for RICO violations[1] alleging corruption in the union and the infiltration of the union by organized crime. On October 23, 1992, Local 100 entered into a consent decree with the federal government allowing HEREIU to take over the affairs of Local 100 in trust, authorizing a continuing investigation of the union's affairs and removing certain union employees.

1. Racketeer Influenced and Corrupt Organizations Act (18 USC § 1964).

In 1995, almost three years after their termination, plaintiffs Stephenson and Hodge filed separate complaints in Supreme Court, New York County against the union for unlawful termination of employment based upon age discrimination. In July 2002, the two actions were consolidated and a jury trial took place in October 2002. The jury rendered verdicts in favor of plaintiffs and awarded Hodge $539,205 in past damages and $127,556 in future damages. Stephenson was awarded $572,853 for past damages and $14,097 for future damages over a 0.2-year period.

Supreme Court denied defendants' CPLR 4404 (a) motion to set aside the verdict and denied plaintiffs' cross motion for damages as a result of emotional distress. The Appellate Division reversed the Supreme Court and granted defendants' CPLR 4404 (a) motion. The Appellate Division stated:

> "Beyond proving that the Trustee had a legitimate and nondiscriminatory reason for discharging plaintiffs, defendants presented powerful evidence— also uncontroverted by plaintiffs—that this reason was no pretext for acts of discrimination. Specifically, defendants showed that, at or about the same time plaintiffs were terminated, the Trustee terminated at least three much younger business agents of Local 100—all under the age of 40—who had also been implicated in the corruption. Meanwhile, the Trustee retained at least two employees over the age of 50 who had not been so implicated. Plaintiffs did not offer evidence controverting any of these facts, nor did plaintiffs offer evidence that they were replaced by younger employees or that any younger employees accused of corruption received more favorable treatment than plaintiffs had been afforded.
>
> "In sum, defendants proved, through uncontradicted evidence, both (1) that the Trustee had a legitimate, nondiscriminatory reason for dismissing plaintiffs, and (2) that age discrimination was not the real reason for the dismissals." (14 AD3d 325, 329-330 [2005].)

Plaintiffs argue that they were hired for their skills and abilities and that they always did their jobs well. Plaintiff Hodge alleges that Frank Gerace, a supervisor at Local 100, responsible for the day-to-day activities of the local, made numerous derog-

atory comments against him regarding his age and constantly said that he wanted to get rid of the old people and put in young blood. Hodge testified that he was unable to find work in the restaurant industry after his termination.

Stephenson testified to similar facts. He was hired in 1983 at the age of 54 as a union organizer and continued in that capacity until his termination in 1992. He claims to have organized "hundreds of shops," some of which had 400 employees. He claims that he was hired because he knew five languages and could communicate with the workers and help in organizing new employees. A union representative, Sergio Fermeglia, testified for the plaintiffs and specifically stated that Stephenson did an excellent job organizing the workers.

Stephenson claims that, in 1991, about a year before he was terminated, one union official, Frank Gerace, told him:

> "You knew you're going to be fired. We told you. You're 64. We don't need people like your age anymore. We need now young blood to do a better job there. They want to get—to get good salary. With the money I pay you, I could pay two employees to work. Besides that, we need young blood, young face. You should now know, it's about time you should look for [a] job. Did you look for [a] job, Albert?"

Thus Stephenson, like Hodge, attributed biased remarks to Gerace, but Gerace was fired before Stephenson and there is no evidence that he participated in the decision to terminate the plaintiffs. Stephenson, however, also testified that when he was fired, the union Trustee, Vincent Sirabella, told him that he was being fired because the union needed new blood.

Defendants maintain that plaintiffs were fired for cause, not because of age discrimination. Defendants argue that plaintiffs were "bag men" for the mob as part of a scheme to defraud and steal from Local 100. According to defendants, plaintiffs collected money and deposited it into their own bank accounts for the purpose of paying off the mob. As a result of the investigation by the United States Attorney's office, plaintiffs were fired and replaced by new employees. Defendants argue that plaintiffs were fired as a result of their illicit activities rather than because of their ages. Defendants argue that plaintiffs were not qualified, as evidenced by the federal probe into their union activities that resulted in a recommendation by the investiga-

tors that they be terminated. Defendants also rely on the report by Assistant United States Attorney Little, though the most damning parts of the report were, erroneously in defendants' view, excluded from evidence at trial.

The standards for recovery under section 296[2] of the Executive Law are similar to the federal standards under title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq.*; *see Ferrante v American Lung Assn.*, 90 NY2d 623, 629 [1997]; *see also Forrest v Jewish Guild for the Blind*, 3 NY3d 295 [2004]). A three part analysis is required to determine whether plaintiffs have met their burden to establish a discrimination claim under Executive Law (Human Rights Law) § 296. First, plaintiffs must demonstrate by a preponderance of the evidence a prima facie case of discrimination (*Ferrante, supra*; *see also Texas Dept. of Community Affairs v Burdine*, 450 US 248, 252-253 [1981]).

> "To support a prima facie case of age discrimination under the Human Rights Law, plaintiff must demonstrate (1) that he is a member of the class protected by the statute; (2) that he was actively or constructively discharged; (3) that he was qualified to hold the position from which he was terminated; and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination" (*see Ferrante*, 90 NY2d at 629).

Second, the burden then shifts to the defendant to rebut plaintiffs' prima facie case of discrimination with a legitimate reason for the firing (*see Ferrante, supra*; *St. Mary's Honor Center v Hicks*, 509 US 502, 506-507 [1993]).

> "The burden that shifts to the defendant . . . is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the prof-

---

2. "Unlawful discriminatory practices

"1. It shall be an unlawful discriminatory practice: . . .

"(c) For a labor organization, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to exclude or to expel from its membership such individual or to discriminate in any way against any of its members or against any employer or any individual employed by an employer." (Executive Law § 296 [1] [c].)

fered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff" (*Burdine*, 450 US 248, 254 [1981], *supra* [citation omitted]).

Third, the plaintiffs must show by a preponderance of the evidence that defendant's reasons are pretextual (*see Ferrante, supra*; *McDonnell Douglas Corp. v Green*, 411 US 792, 802-806 [1973]). Moreover, the burden of persuasion of the ultimate issue of discrimination always remains with the plaintiffs (*see Hicks*, 509 US 502, 511 [1993], *supra*; *Reeves v Sanderson Plumbing Products, Inc.*, 530 US 133, 143 [2000]; *Burdine*, 450 US 248, 253 [1981], *supra*).

In the case at bar, plaintiffs were ages 55 and 63 at the time of termination and thus were members of the class protected by Human Rights Law § 296. Both Hodge and Stephenson were actively discharged from employment. There was evidence presented by plaintiffs that they were both qualified for the jobs of organizer and business agent. Plaintiffs argued that they were replaced or the intention was to replace them with younger workers. While plaintiffs were not replaced with young people (Aldo Lupano, Noel Rodriguez and David Segarra were not far from plaintiffs' ages), there was enough evidence presented at trial to establish a prima facie case that defendants intended to replace plaintiffs with younger employees.

Defendants, however, met their burden of proving that there were legitimate reasons for terminating plaintiffs. The strongest evidence that plaintiffs may have been involved in civil violations of the RICO statute comes from Kish, the vice-president of Kroll Associates, an investigating company, that recommended that they be fired after receiving information from an FBI informant that Hodge and Stephenson were involved in the corruption of the union which included accepting bribes and preventing organizing at organized crime controlled restaurants. After the nondiscriminatory reasons were given and the burden shifted to them, plaintiffs did not prove that the reasons given were pretextual. Plaintiffs in their rebuttal case recalled Hodge and Stephenson. Both denied the allegations of corruption.

The Appellate Division did not impermissibly substitute its version of the facts for those of the trial court. Viewing the evidence in the light most favorable to the plaintiffs, there is no valid line of reasoning and permissible inferences that could have lead rational jurors to the conclusion they reached (*Cohen v Hallmark Cards*, 45 NY2d 493 [1978]), the evidence was

legally insufficient to support the jury's verdict and, thus, the CPLR 4404 (a) motion was properly granted to the defendants.

Accordingly, the order of the Appellate Division should be affirmed, with costs. The certified question should not be answered upon the ground that it is unnecessary.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur; Judge READ taking no part.

Order affirmed, etc.