■ In the Matter of MICHAEL KAPLAN, Petitioner/Cross Respondent, v NEW YORK STATE DIVISION OF HUMAN RIGHTS, Respondent/Cross Petitioner, et al., Respondent. [944 NYS2d 616]—

Proceeding pursuant to CPLR article 78 and, in effect, Executive Law § 298, to review a determination of the Commissioner of the New York State Division of Human Rights, dated February 28, 2011, which adopted the recommendations and findings of an Administrative Law Judge dated August 20, 2010, made after a hearing, finding that the petitioner violated Executive Law § 296 (1) (a) by discriminating against the complainant on the basis of her military status, and awarded the complainant compensatory damages in the principal sum of $15,000, and back pay in the principal sum of $10,880, and cross petition by the New York State Division of Human Rights pursuant to Executive Law § 298 to enforce the determination.

Adjudged that the petition is granted, on the law, and the cross petition is denied, without costs or disbursements, the determination is annulled, and the administrative complaint is dismissed.

The petitioner hired the complainant, a member of the United States military reserve, to work as a medical assistant in the petitioner's bariatric medicine office in Westbury after the petitioner interviewed the complainant in August 2005 on the recommendation of a former employee. When the complainant told the petitioner and his office manager during the interview that her membership in the military reserve required her to perform duty on the first weekend of every month and for two weeks in the summer, the petitioner arranged for the complainant's work schedule not to include any weekends on which the complainant was scheduled for duty.

There were no problems with the complainant's performance through the end of 2005. On February 17, 2006, the petitioner called the complainant on her cell phone to find out why she failed to appear for work despite the fact that her shift began an hour earlier. The complainant told him that she was performing additional reserve duty at a recruiting station in Harlem, and that she would return to the office as soon as she was released. When the complainant put her sergeant on the telephone, the petitioner told him that he had no notice that the complainant would be performing her military duties at that time. In addition to advising the petitioner that civilian matters yield to miliary duty, the sergeant faxed the petitioner an undated letter, which stated that the complainant "has work on ADSW (Active Duty Special Work)" (hereinafter ADSW duty) for the time periods of February 6-10, 2006, and February 13-17, 2006, and that she "assisted with numerous duties vital to the Recruiting Mission."

Within days after the phone call, the complainant reported an incident to the petitioner in which her coworker allegedly cursed her and disparaged her race and military status when the complainant refused to interrupt a nurse who was treating a patient. At a meeting convened by the petitioner on February 22, 2006, to examine the situation, the petitioner elicited the coworker's apology to the complainant for cursing her, placed the coworker on probation, and placed the complainant on probation for being late to work on multiple occasions. At this time, the complainant told the petitioner that she was late the previous week because she had to travel from Harlem, where she was serving ADSW duty, to the petitioner's office in Westbury, and that there should not be a future problem because her ADSW duty had concluded.

The complainant was subsequently late to work on three occasions between February 22, 2006, and March 29, 2006, for reasons having nothing to do with her military service. On March 29, 2006, the complainant failed to return from lunch early, as the office manager had requested. When the complainant arrived at the office at 3:30 P.M. or 4:00 P.M. on that date, the office manager told the complainant that she was "sick and tired" of her, and terminated the complainant's employment. The complainant asked the petitioner why her employment was being terminated. He told her that he agreed with the termination because he was "sick and tired" of her as well, she was a big inconvenience because he and his other employees had to deal with the military and her internal complaint about her coworker, and it was best to just fire her.

In December 2006 the complainant filed an administrative complaint against the petitioner with the New York State Division of Human Rights (hereinafter the DHR), alleging that the petitioner violated Executive Law article 15 by discharging her on the basis of her race and military status (*see* Executive Law § 296 [1] [a]). After a hearing, an administrative law judge (hereinafter the ALJ), inter alia, rejected the complainant's contention that she was discriminated against on the basis of her race, but found that the petitioner unlawfully discriminated against the complainant on the basis of her military status by terminating her employment for lateness during the time she was serving ADSW duty. The Commissioner of the DHR adopted the ALJ's recommendations and findings of fact in a final order dated February 28, 2011, which awarded the complainant back pay in the sum of $10,880 with interest, and damages for mental anguish in the sum of $15,000, with postdetermination interest.

The petitioner then commenced this proceeding pursuant to

CPLR article 78 and, in effect, Executive Law § 298 in the Supreme Court to review the DHR's determination adopting the recommendations and findings of the ALJ that the petitioner violated Executive Law article 15, and awarding damages. The DHR cross-petitioned to enforce its determination. The Supreme Court transferred the proceeding to this Court for determination pursuant to CPLR 7804 (g) and, in effect, Executive Law § 298. We grant the petition, deny the cross petition, annul the determination, and dismiss the administrative complaint.

Judicial review of a determination of the DHR made after a hearing is limited to whether the determination is supported by substantial evidence (*see Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100, 106 [1987]; *Matter of MTA Trading, Inc. v Kirkland*, 84 AD3d 811, 813 [2011]; *cf. Matter of Shuler v New York City Hous. Auth.*, 88 AD3d 895, 896 [2011]; *Matter of Coulter v State of N.Y. Ins. Dept.*, 74 AD3d 963, 964-965 [2010]). Here, the DHR's determination was not supported by substantial evidence.

To establish liability under Executive Law § 296 (1) (a) arising from the termination of employment, a complainant must establish, before the DHR, a prima facie case of discrimination by a preponderance of the evidence (*see Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d 265, 270 [2006]), by showing that the complainant (1) is a member of a class protected by the statute; (2) was actively or constructively discharged; (3) was qualified to hold the position from which he or she was terminated; and (4) was terminated under circumstances which give rise to an inference of discrimination (*id.*, citing *Ferrante v American Lung Assn.*, 90 NY2d 623, 629 [1997]). The burden of establishing a prima facie showing has been described as "de minimus" (*see Abdu-Brisson v Delta Air Lines, Inc.*, 239 F3d 456, 467 [2001], *cert denied* 534 US 993 [2001]; *Vinokur v Sovereign Bank*, 701 F Supp 2d 276, 286-287 [2010]). Once such a showing has been made, the burden shifts to the employer to rebut the prima facie case by providing a legitimate, nondiscriminatory reason for the complainant's discharge (*see Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d at 270, citing *Ferrante v American Lung Assn.*, 90 NY2d at 629). In response to such a rebuttal, the complainant must show by a preponderance of the evidence that the employer's reasons for the challenged termination were pretextual (*see Vinokur v Sovereign Bank*, 701 F Supp 2d at 287), with the complainant having the burden of persuasion on the ultimate issue of discrimination (*see Texas Dept. of Community Affairs v Burdine*, 450 US 248, 253 [1981];

*Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d at 271).

The complainant here met her burden of demonstrating a prima facie case of discrimination based on military status by demonstrating that the petitioner terminated her for being late on days which included days she served ADSW duty, and that the petitioner remarked that he was tired of dealing with issues relating to her military status, which give rise to an inference of discrimination (*cf. Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d at 271; *Matter of Putnam/ Northern Westchester Bd. of Coop. Educ. Servs. v Westchester County Human Rights Commn.*, 81 AD3d 733 [2011]). However, in response to the complainant's prima facie showing, the petitioner demonstrated that he terminated her for a legitimate, nondiscriminatory reason which was not based on her military status (*see Ferrante v American Lung Assn.*, 90 NY2d at 629).

Although the complainant testified at the hearing before the DHR that, on January 9, 2006, she gave the petitioner and his office manager written notice of her obligation to serve ADSW duty, the purported written notice is a form "ADSW Request-Recruiter's Request," which the complainant was required to fill out and return to her sergeant, and contained no indication of proposed dates of service, as the complainant conceded. The complainant also testified that she gave the petitioner notice of her obligation to serve ADSW duty in a memorandum of battle assembly dates later in January 2006, but that document contains no reference to ADSW duty, and only sets forth the dates of the complainant's regularly scheduled duty at the beginning of each month, which had nothing to do with her termination. The complainant also relied on an undated letter which her sergeant faxed to the petitioner during their phone conversation on February 17, 2006, but this document, which indicates that the complainant served ADSW duty during the previous two weeks, apparently was prepared only at that time, and did not constitute advance notice. When confronted with the direct question of whether she gave the petitioner advance notice of the dates on which she would be obligated to serve ADSW duty, the complainant impliedly conceded that she did not by stating that she told the petitioner when he interviewed her that she could be called without notice before being sent on duty, and that "the Military comes first and every civilian employee knows that."

Further, the complainant's time cards support the petitioner's contention that he terminated the complainant's employment because she continued to be late after being placed on probation

for lateness on February 22, 2006, including the day her employment was terminated, for reasons having nothing to do with her military status. The petitioner's argument that he did not discharge the complainant because of her military status is further supported by the fact that he hired the complainant after a single interview, with full knowledge of her regularly scheduled reserve obligations, which he accommodated by not scheduling her to work on the first weekend of any month.

In light of the foregoing, the petitioner met his burden before the DHR of demonstrating that he terminated the complainant's employment for a legitimate, nondiscriminatory reason and, in response, the complainant failed to show that this reason was pretextual (*see Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d at 270-271). Accordingly, the DHR's determination was not supported by substantial evidence in the record and must, thus, be annulled.

The petitioner's remaining contentions have been rendered academic in light of our determination. Rivera, J.P., Hall, Lott and Austin, JJ., concur.