[2 NYS3d 132]

Jeffrey Chiara, Appellant, v Town of New Castle et al., Respondents.

Second Department, January 14, 2015

## APPEARANCES OF COUNSEL

*Wolin & Wolin*, Jericho (*Alan E. Wolin* of counsel), for appellant.

*Hodges Walsh & Slater, LLP*, White Plains (*Paul E. Svensson* of counsel), for respondents.

## OPINION OF THE COURT

LEVENTHAL, J.

In this case of first impression for this Court, we are primarily asked to determine whether a plaintiff alleging discrimination in employment on the basis of religion in violation of Executive Law § 296 can establish a prima facie case by alleging that he was discriminated against because of the religion of his spouse. For the reasons discussed below, we answer this question in the affirmative.

In 1992, the plaintiff was hired by the defendant Town of New Castle as a highway laborer, and later promoted to the position of machine equipment operator. The plaintiff, who is not Jewish, is married to a Jewish woman. According to the plaintiff, shortly after he began working for the Town in 1992 or 1993, he heard his coworkers make several remarks "in reference to the Jewish religion and Jewish beliefs." He then informed his coworkers that his wife was Jewish. One of the plaintiff's coworkers, the defendant Michael Molnar, nevertheless continued to repeatedly make anti-Semitic remarks in the plaintiff's presence, and to harass him. Among other things, the plaintiff claims that, shortly after the commencement of his employment, Molnar referred to him several times as a "Jew lover," and said that "Hitler had the right idea with the Jews to make lamp shades out of their skin." The plaintiff made numerous complaints about Molnar's comments to his supervisors, but Molnar's offensive conduct persisted. The tension between the two men escalated on May 17, 2002, when the plaintiff confronted Molnar over his anti-Semitic and derogatory remarks, telling him that enough was enough and that the comments had to end. A heated exchange followed, resulting in Molnar's suspension, without pay, for two weeks. Molnar was also required to enter into a stipulation with the Town in which he agreed that if he used "offensive, threatening, or demeaning language" toward his coworkers, it could result in the termination of his employment.

In January 2005, the plaintiff commenced this action against the Town, Molnar, and Gerard Moerschell, as Commissioner of

the Department of Public Works for the Town, to recover damages for, among other things, discrimination in employment and a hostile work environment in violation of the New York State Human Rights Law (see Executive Law § 296).[1]

In an amended verified complaint dated July 12, 2006, which added Town Administrator Gennaro Faiella as a defendant, the plaintiff alleged that Molnar and the other defendants discriminated against him because his wife was Jewish. More specifically, the plaintiff alleged that in March 2005, general foreman Jan Schwark and supervisor Mark Orser informed him that Moerschell and Faiella were "attempting to force subordinate supervisors to discipline plaintiff."

The plaintiff also alleged in his complaint that in June 2005, highway foreman Michael Clifford, upon hearing the name of a person that the Town was going to hire, allegedly said, "That Jew will not get a job here." In June 2005, assistant highway foreman John O'Hearn, while driving, allegedly yelled to another driver, "Don't even think about it Jew boy." Also in June 2005, Clifford, in an attempt to explain where to place certain road signs, allegedly said, "Place them on the curve by the Jew farm." In addition, in June 2005, Clifford, referring to a passerby, allegedly said, "He looks like a Jew."

Disciplinary Charges

In June 2006, more than one year after the plaintiff commenced this employment discrimination action, the Town filed disciplinary charges against him, alleging seven instances of "misconduct and/or insubordination." After an administrative hearing pursuant to Civil Service Law § 75 in September 2006, the Hearing Officer rejected the plaintiff's contention that the charges were brought in retaliation for his commencement of the action. Upon finding the plaintiff guilty of five charges of misconduct (using profane language toward a supervisor, missing a departmental meeting and making an inappropriate remark to his supervisor, falsely calling in sick on two consecutive days, leaving work without permission, and visiting a bagel shop during working hours), the Hearing Officer recommended that the plaintiff be terminated from his employment. The Town adopted the Hearing Officer's recommendation, and the plaintiff was terminated from his employment on March 28, 2007.

---

1. The Supreme Court subsequently granted the defendants' motion to dismiss the causes of action to recover damages for defamation, retaliation, and intentional infliction of emotional distress.

The plaintiff filed a petition pursuant to CPLR article 78 to review the Town's determination, contending that the disciplinary charges had been instituted against him in retaliation for his commencement of this action. The proceeding was transferred to this Court (*see* CPLR 7804 [g]), which confirmed the determination, denied the petition, and dismissed the proceeding (*see Matter of Chiara v Wells*, 61 AD3d 973 [2009]). This Court concluded that the plaintiff had failed to allege sufficient facts to show that the disciplinary charges had been instituted against him in retaliation for his commencement of this action, and that "[t]he determination that the [plaintiff] was guilty of misconduct is supported by substantial evidence in the record" (*id.* at 973).

In an order dated August 16, 2007, the Supreme Court, among other things, granted the defendants' motion for summary judgment dismissing the amended complaint to the extent that it pertained to the charges sustained in the disciplinary proceeding, and denied the plaintiff's cross motion for leave to further amend the amended complaint to add a claim for retaliation based upon his termination from his employment.

On appeal from the order dated August 16, 2007, this Court affirmed the order insofar as appealed from, holding that the doctrine of collateral estoppel applied to the issues of misconduct and retaliation which had been litigated and sustained in the prior disciplinary proceeding so as to bar the plaintiff from relitigating those issues (*see Chiara v Town of New Castle*, 61 AD3d 915 [2009]). We specifically noted, however, that so much of the amended complaint as alleged employment discrimination, disparate treatment, and hostile work environment in violation of the State Human Rights Law was not subject to dismissal based upon the doctrine of collateral estoppel (*see id.* at 916).

The Defendants' Motion for Summary Judgment

In October 2011, the defendants moved for summary judgment dismissing the remaining causes of action in the amended complaint on the ground that the plaintiff could not establish a prima facie case of employment discrimination, and could not set forth a triable issue of fact as to his claim of a hostile work environment. With regard to the employment discrimination claim, the defendants argued that the plaintiff could not establish a prima facie case because he himself was not a member of a protected class, and there was no authority for allowing a

claim of discrimination under the State Human Rights Law to proceed based upon a spouse's religion. The defendants further argued that the plaintiff could not establish that his discharge occurred under circumstances giving rise to an inference of discrimination. Moreover, the defendants maintained that, even if the court were to find that the plaintiff was a member of a protected class, his discharge was based upon legitimate and nondiscriminatory reasons. In support, they noted that this Court had found that there was substantial evidence that the plaintiff was guilty of misconduct with respect to the disciplinary charges. Thus, the defendants submitted that the plaintiff's termination was a legitimate, nondiscriminatory action taken by an employer to discipline a poorly performing, insubordinate employee.

The defendants further argued that there was no factual basis to support a claim of a hostile work environment. In support of their position, the Town submitted that, even if Molnar made the anti-Semitic comments alleged by the plaintiff, these comments alone could not satisfy the plaintiff's burden of showing that the explanation for his termination was pretextual. The defendants also asserted that the Town did not condone the comments which Molnar allegedly made before the plaintiff confronted him in May 2002, and that the Town took decisive action to prevent a reoccurrence. In this regard, the defendants noted that the plaintiff had made complaints about Molnar prior to the May 2002 incident, and that the Town separated the two men by giving them different work assignments. Nevertheless, the plaintiff took matters into his own hands in May 2002 by confronting Molnar in the lunchroom, telling Molnar that he would not tolerate any more comments, and threatening to kill him. In response, "the Town took immediate action to separate their work assignments and—upon their altercation—to bring Molnar up on disciplinary charges and suspend him for two weeks." However, the plaintiff was not disciplined. In addition to suspending Molnar, the Town required him to attend anger management and diversity training courses. The Town additionally asserted that the incidents of alleged hostile conduct after 2002 merely consisted of Molnar glaring at the plaintiff, curling his lip, mouthing words, or making indirect comments. According to the defendants, after the May 2002 incident, Molnar never said a word about the plaintiff's wife's religion.

In support of the motion, the defendants submitted, among other things, evidence showing that, after Molnar was disci-

plined for making derogatory remarks about the plaintiff's wife, the Town required all of its employees to attend a "sensitivity training" class that discussed discrimination in employment on the basis of religion. The defendants noted that the plaintiff testified that he could not recall if Molnar made any additional derogatory remarks after 2002.

## The Plaintiff's Opposition

In an affirmation, the plaintiff's counsel argued that the plaintiff had established a prima facie case of employment discrimination and, specifically, that the plaintiff showed that he was a member of a protected class by virtue of his marriage to his wife. In support of his position, counsel pointed out that the plaintiff had a constitutional right to associate with others in intimate relationships, and argued that a violation of that right could fall within the zone of interest protected by anti-discrimination laws. Counsel further argued that there was ample evidence in the record, including the plaintiff's deposition transcript, which established that discrimination on the basis of religion was a motivating factor in his termination. He additionally argued that there was sufficient evidence to demonstrate that the plaintiff experienced workplace harassment that was so severe and pervasive as to alter the conditions of his employment.

In further support, the plaintiff submitted, among other things, an affidavit sworn to by him on November 29, 2011. In his affidavit, the plaintiff averred that his supervisors also made anti-Semitic remarks in his presence. He stated that: his supervisor, Charlie Bergstrom, on more than 10 occasions, right up to 2007, referred to him as a "Jew lover," referred to certain taxpayers as "that person is a Jew or he's a Jew or she's a Jew," and referred to someone as "the fucking Jew"; assistant highway foreman John O'Hearn, in 2005 or 2006, while driving, yelled to another driver, "Don't even think about it Jew boy"; and highway foreman Michael Clifford said, sometime between 2005 and 2007, "Oh, that Jew will never get a job here," referred to a yeshiva as a "Jew farm," and said in reference to a passerby, "That guy looks like a Jew."

In addition, the plaintiff averred that, despite the fact that Molnar continued to repeatedly harass him after signing the 2002 agreement, Molnar had been promoted by the Town to the position of heavy motor equipment operator. This position paid more than the position of motor equipment operator and gave Molnar supervisory authority over motor equipment operators.

The plaintiff added that, since 2002, he was the only employee of the Town's Department of Public Works who had received a notice of disciplinary charges pursuant to Civil Service Law § 75. The plaintiff averred that the only other town employee terminated during that time period was Police Officer Steven Kaufman, who is Jewish and "had a lawsuit pending against the Town and others in which [Kaufman] claimed that the Town had . . . committed anti-Semitic activity against him." Moreover, the plaintiff asserted that other town employees had committed "acts much more egregious" than he had and were not disciplined. For example, an employee of the Town's Parks Department spray-painted graffiti on a town truck and was not disciplined, and Molnar pleaded guilty to assault in the third degree while he was a town employee and was not disciplined as a result.

The Order Appealed from

In an order entered May 24, 2012, the Supreme Court granted the defendants' motion for summary judgment. The court stated:

> "Motion insofar as it seeks summary judgment with respect to the cause of action for discrimination is granted.

> "There is no basis in this case to find that plaintiff was subject to any adverse employment action, directly or indirectly, by the Town on the basis of religion. As discussed above, Molnar, who allegedly made anti-Semitic remarks about plaintiff's wife, was not in a supervisory capacity to plaintiff and was reprimanded and disciplined for his behavior in 2002. Plaintiff testified that he could not recall any specific comments by Molnar related to his wife's religion after his reprimand in 2002 and comments by others became 'few and far in between.'

> "Other allegedly anti-Semitic comments by Molnar and other persons were not specifically directed at plaintiff and made no mention of plaintiff or plaintiff's wife being Jewish. Plaintiff also testified that, as a result of the 2002 incident, the Town implemented town-wide sensitivity training for all employees for the purpose of discouraging religious discrimination. The contention by plaintiff, that he was nonetheless somehow discriminated against by

the Town, based on his wife's religion, is nothing more than conjecture.

"Motion insofar as it seeks summary judgment with respect to the cause of action for hostile work environment is granted.

"As discussed above, Molnar was reprimanded and disciplined for his conduct in 2002. Plaintiff testified he could only recall five specific incidents of allegedly hostile conduct by Molnar after the 2002 reprimand in the period between 2002 and 2007. That largely consisted of Molnar glaring, making facial expressions, mouthing words or making indirect comments. Although no doubt unpleasant for plaintiff to encounter, such conduct fails to rise to the level of a hostile work environment or demonstrate that the Town condoned or acquiesced in the creation of a hostile work environment.

"The bulk of the other allegations by plaintiff in the amended complaint, which relate to the disciplinary charges brought by the Town, also do not demonstrate a hostile work environment as there was substantial evidence, according to the Appellate Division, to support the charges of misconduct and plaintiff's dismissal."

The plaintiff appeals.

Employment Discrimination Cause of Action

The standards for recovery under Executive Law § 296, our State Human Rights Law, are similar to the federal standards under title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq.; see Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d 265, 270 [2006]; *Ferrante v American Lung Assn.*, 90 NY2d 623, 629 [1997]). To establish liability under the State Human Rights Law arising from the termination of employment, a plaintiff has the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence (*see Matter of Kaplan v New York State Div. of Human Rights*, 95 AD3d 1120, 1123 [2012]). To establish a prima facie case of discrimination under the State Human Rights Law, a plaintiff who has been terminated from employment must demonstrate (1) that he or she is a member of the class protected by the statute, (2) that he or she was actively or constructively discharged, (3) that he or she was

qualified to hold the position from which he or she was terminated, and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination (*see Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d at 270; *Ferrante v American Lung Assn.*, 90 NY2d at 629).

The burden of establishing a prima facie case of discrimination is de minimis (*see Matter of Kaplan v New York State Div. of Human Rights*, 95 AD3d at 1123; *Abdu-Brisson v Delta Air Lines, Inc.*, 239 F3d 456, 467 [2d Cir 2001]). Once such a showing has been made, the burden shifts to the defendant to rebut the plaintiff's prima facie case of discrimination by producing evidence of a legitimate, nondiscriminatory reason for the firing (*see Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d at 270-271; *Matter of Kaplan v New York State Div. of Human Rights*, 95 AD3d at 1123; *see also St. Mary's Honor Center v Hicks*, 509 US 502, 506-507 [1993]).

In reviewing the defendants' motion for summary judgment, this Court must determine whether the defendants met their burden of establishing "a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY3d 320, 324 [1986]; *see* CPLR 3212 [b]). This burden is a heavy one because, on a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party (*see Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]). A movant's failure to make a prima facie showing of entitlement to judgment as a matter of law requires a denial of the motion, regardless of the sufficiency of the opposing papers (*see id.*).

In support of that branch of their motion which was for judgment as a matter of law dismissing the cause of action alleging employment discrimination, the defendants contended that the plaintiff could not establish the first and fourth elements of that cause of action. Hence, only those two elements are at issue (*cf. Stukas v Streiter*, 83 AD3d 18, 24 [2011]).

As to the first element, the defendants continue to maintain that the plaintiff is not a member of a protected class because he is not himself a member of the Jewish faith. The defendants assert that there is no authority to support a claim of discrimination based upon the religious belief of a spouse under the State Human Rights Law. While there is no authority addressing this issue under the State Human Rights Law, several

federal courts have construed title VII to protect individuals "who are the victims of discriminatory animus towards third persons with whom the individuals associate" (*Tetro v Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F3d 988, 994 [6th Cir 1999]).

For example, in *Holcomb v Iona Coll.* (521 F3d 130, 138 [2d Cir 2008]), the plaintiff, a white male, was hired as an assistant basketball coach at Iona College in 1995. In June 2000, the plaintiff married an African-American woman, and in 2004, he was terminated from his employment. The plaintiff alleged that the decision to terminate his employment was based, in part, upon his interracial marriage, in violation of title VII. The United States Court of Appeals for the Second Circuit held that "an employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race" (*id.* at 132). In vacating the judgment entered upon the District Court's decision granting the defendant's motion for summary judgment, the Second Circuit determined that the plaintiff sufficiently alleged his membership in a protected class, reasoning that "where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own* race" (*id.* at 139).

The United States Court of Appeals for the Eleventh Circuit similarly concluded, in *Parr v Woodmen of the World Life Ins. Co.* (791 F2d 888 [1986]), that a white male, who was married to an African-American woman, stated a claim for employment discrimination in violation of title VII, holding that "[w]here a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race" (*id.* at 892). In support of its determination, the Eleventh Circuit noted that title VII was a "clear mandate from Congress that no longer will the United States tolerate this form of discrimination," and that it was thus the duty of the courts to ensure that the intent of Congress "is not hampered by a combination of a strict construction of the statute in a battle with semantics" (*id.* at 892 [emphasis omitted]; *see Culpepper v Reynolds Metals Co.*, 421 F2d 888, 891 [5th Cir 1970]).

■ Here, the plaintiff asserts that the Town and others subjected him to employment discrimination because his wife is Jewish. While the plaintiff's allegations call to mind the infamous Nuremberg Laws enacted in 1935, which stripped

German Jews of their civil rights and citizenship and prohibited persons of "German or related blood" from marrying or having sexual relations with German Jews,[2] we are aware that the defendants' alleged conduct is not akin to town-initiated discrimination. State Human Rights Law claims under Executive Law § 296 are "analytically identical to claims brought under Title VII" (*Torres v Pisano*, 116 F3d 625, 629 n 1 [1997]; *see Ferrante v American Lung Assn.*, 90 NY2d at 629), and thus we see no reason to construe the state statute more restrictively than the federal statute. Accordingly, the plaintiff sufficiently demonstrated his membership in a protected class by virtue of the defendants' alleged discriminatory conduct stemming from his marriage to a Jewish person. Indeed, we note that discrimination against an individual based on his or her association with a member of a protected class also constitutes an infringement upon that individual's First Amendment right to intimate association, which receives protection as a fundamental element of personal liberty (*see Roberts v United States Jaycees*, 468 US 609, 617-618 [1984] ["choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme"]; *Matusick v Erie County Water Auth.*, 757 F3d 31 [2d Cir 2014] [where plaintiff, a white male, alleged that he was discriminated against and terminated from his employment because of his engagement to an African-American female, the United States Court of Appeals for the Second Circuit recognized, for the first time, that a constitutionally protected right to intimate association based upon marriage engagement could be the predicate for a claim that the defendants, while acting under color of state law, deprived the plaintiff of his First and Fourteenth Amendment rights in violation of 42 USC § 1983]).

Turning to the other element at issue, the defendants contend that the plaintiff cannot establish that his termination occurred under circumstances giving rise to an inference of discrimination. The plaintiff alleges that the Town terminated

---

**2.** *See* United States Holocaust Memorial Museum: The Nuremberg Race Laws, http://www.ushmm.org/outreach/en/article.php?ModuleId=10007695 (accessed Oct. 30, 2014); *see also Loving v Virginia*, 388 US 1 (1967) (Supreme Court struck down criminal statute barring interracial marriages as violative of Equal Protection and Due Process Clauses of the 14th Amendment of the Federal Constitution).

his employment, at least in part, because of his association with his wife.

Our dissenting colleague notes that the Town terminated the plaintiff's employment following an administrative hearing and that, on appeal, this Court held that the determination was supported by substantial evidence.[3] Of course, the charges against the plaintiff in the disciplinary matter are not identical to the allegations asserted in this action. The Hearing Officer was not required to decide whether the disciplinary charges against the plaintiff were a pretext for discrimination or were partly motivated by discrimination. It is for this reason that, in our prior decision and order in this action, we noted that so much of the amended complaint as alleged employment discrimination, disparate treatment, and hostile work environment in violation of the State Human Rights Law § 296 was not subject to dismissal based upon the doctrine of collateral estoppel (*see Chiara v Town of New Castle*, 61 AD3d 915 [2009]).

Nevertheless, we agree with our dissenting colleague that, on their motion for summary judgment, the defendants established, prima facie, that the plaintiff was not terminated from his employment under circumstances giving rise to an inference of discrimination. In this regard, the defendants submitted evidence demonstrating that the plaintiff was terminated in 2007 for legitimate, nondiscriminatory reasons— specifically, the issues litigated and decided during the disciplinary hearing.

However, in opposition to the defendants' prima facie showing of entitlement to judgment as a matter of law, the plaintiff raised a triable issue of fact. The evidence demonstrates that, during the plaintiff's employment with the Town, certain individuals employed by the Town in varying supervisory capacities made several anti-Semitic remarks in his presence, while knowing that his wife was Jewish. For example, the plaintiff alleges that Bergstrom, his supervisor, on more than 10 occasions, right up to 2007, referred to him as a "Jew lover."

---

**3.** As a burden of proof, substantial evidence demands only that a given inference is reasonable and plausible, not necessarily the most probable (*see Matter of Miller v DeBuono*, 90 NY2d 783, 793 [1997]). Indeed, administrative decisions, if supported by substantial evidence in the record, must be confirmed, even where there is other evidence in the record that arguably could support a contrary result (*see e.g. Matter of Ridge Rd. Fire Dist. v Schiano*, 16 NY3d 494, 500 [2011]; *Matter of Spencer v New York State & Local Employees' Retirement Sys.*, 220 AD2d 792, 793 [1995]).

In addition, the plaintiff contends that Clifford made various anti-Semitic remarks between 2005 and 2007, and that O'Hearn made an anti-Semitic remark in 2005 or 2006. Notably, both Clifford and O'Hearn testified against the plaintiff at the disciplinary hearing held in 2006.

■ Verbal comments can serve as evidence of discriminatory motivation when a plaintiff shows a nexus between the discriminatory remarks and the employment action at issue (*see Sandiford v City of N.Y. Dept. of Educ.*, 94 AD3d 593, 604 [2012], *affd* 22 NY3d 914 [2013]; *Schreiber v Worldco, LLC*, 324 F Supp 2d 512, 519 [SD NY 2004]; *see also Crawford v Department of Investigation*, 324 Fed Appx 139, 142 [2d Cir 2009]; *Henry v Wyeth Pharms., Inc.*, 616 F3d 134, 149-150 [2010]; *Tomassi v Insignia Fin. Group, Inc.*, 478 F3d 111, 115-116 [2007]). In determining whether a comment is probative of discrimination, the following factors are considered: (1) whether the comment was made by a decisionmaker, a supervisor, or a low-level coworker, (2) whether the remark was made close in time to the adverse employment decision, (3) whether a reasonable juror could view the remark as discriminatory, and (4) the context of the remark—that is, whether the remark related to the decision-making process (*see Schreiber v Worldco, LLC*, 324 F Supp 2d at 519). Even stray remarks in the workplace by persons who are not involved in the pertinent decision-making process may suffice to present a prima facie case, provided those remarks evidence invidious discrimination (*see Belgrave v City of New York*, 1999 WL 692034, * 29, 1999 US Dist LEXIS 13622, *89-90 [ED NY, Aug. 31, 1999, No. 95-CV-1507 (JG)], *affd* 216 F3d 1071 [2d Cir 2000]; *Ostrowski v Atlantic Mut. Ins. Cos.*, 968 F2d 171, 182 [2d Cir 1992]; *Schreiber v Worldco, LLC*, 324 F Supp 2d at 522).

Applying these principles here, triable issues of fact exist as to whether the Town's reasons for terminating the plaintiff were " 'merely a pretext for discrimination' " or were motivated, in part, by discrimination (*Sandiford v City of N.Y. Dept. of Educ.*, 22 NY3d 914, 916 [2013], quoting *Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]). The record demonstrates that the supervisors employed by the Town made various anti-Semitic remarks in the plaintiff's presence during the time that the disciplinary charges were made against him, and that some of those supervisors testified against him during the administrative hearing, which resulted in the termination of his employment. Thus, a trier of fact could determine that

there was a causal connection between the supervisors' discriminatory comments and the Town's decision to terminate the plaintiff's employment.

Our dissenting colleague would hold that any improper, disparaging remarks that the plaintiff's supervisors allegedly made were insufficient to raise a triable issue of fact because such remarks were not directed at either the plaintiff or his wife, or because such remarks conflicted with the plaintiff's testimony. The perceived insufficiency and conflict, however, merely constitute factual issues for trial, not grounds for summary judgment. As summary judgment is a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues (*see Millerton Agway Coop. v Briarcliff Farms*, 17 NY2d 57, 61 [1966]; *Stukas v Streiter*, 83 AD3d at 23), it is better to err on the side of permitting the factfinder to decide such issues.

The defendants' remaining contentions regarding the cause of action alleging employment discrimination are without merit. Therefore, the Supreme Court should have denied that branch of the defendants' motion which was for summary judgment dismissing the cause of action to recover damages for discrimination in employment on the basis of religion in violation of the State Human Rights Law.

The Hostile Work Environment Cause of Action

■ A hostile work environment exists where the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (*Harris v Forklift Systems, Inc.*, 510 US 17, 21 [1993] [internal quotation marks and citation omitted]; *see Forrest v Jewish Guild for the Blind*, 3 NY3d at 310). Various factors, such as frequency and severity of the discrimination, whether the allegedly discriminatory actions were threatening or humiliating or a "mere offensive utterance," and whether the alleged actions "unreasonably interfere[ ] with an employee's work," are to be considered in determining whether a hostile work environment exists (*Forrest v Jewish Guild for the Blind*, 3 NY3d at 310-311). The allegedly abusive conduct must not only have altered the conditions of employment of the employee, who subjectively viewed the actions as abusive, but the actions must have created an "objectively hostile or abusive environment—one that a reasonable person would find to be so" (*id.* at 311). "[M]ere personality conflicts must not be mistaken for unlawful discrimination" (*id.* at 309).

The defendants established, prima facie, their entitlement to judgment as a matter of law dismissing the cause of action alleging a hostile work environment. The defendants presented evidence that, after Molnar was disciplined for his derogatory remarks, the additional discriminatory remarks allegedly made by the plaintiff's supervisors were offensive utterances which did not interfere with the plaintiff's work (*see Snell v Suffolk County*, 782 F2d 1094, 1103 [2d Cir 1986] [instead of sporadic racial slurs, there must be "sufficiently continuous and pervasive" harassment]; *Brown v Coach Stores, Inc.*, 163 F3d 706, 713 [2d Cir 1998] [no hostile work environment was demonstrated where supervisor made, on occasion, racist remarks, including one directed at plaintiff]). In opposition, the plaintiff failed to raise a triable issue of fact as to whether the remarks made by the plaintiff's supervisors constituted discriminatory behavior sufficiently severe or pervasive enough to interfere with his work. Accordingly, the Supreme Court properly granted that branch of the defendants' motion which was to dismiss the cause of action alleging a hostile work environment.

Accordingly, the order is modified, on the law, by deleting the provision thereof granting that branch of the defendants' motion which was for summary judgment dismissing the cause of action alleging discrimination on the basis of religion in violation of the State Human Rights Law, and substituting therefor a provision denying that branch of the defendants' motion; as so modified, the order is affirmed.

ROMAN, J. (concurring in part and dissenting in part). I disagree with my colleagues in the majority that the Supreme Court erred in awarding summary judgment to the defendants dismissing the cause of action to recover damages for employment discrimination in violation of Executive Law § 296. Therefore, I respectfully concur in part and dissent in part, and vote to affirm the order appealed from in its entirety.

To establish a prima facie case of discrimination under Executive Law § 296, a plaintiff who has been terminated from his or her employment must demonstrate that (1) he or she is a member of a protected class, (2) he or she was actively or constructively discharged, (3) he or she was qualified to hold the position from which he or she was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of discrimination (*see Ferrante v American Lung Assn.*, 90 NY2d 623, 629 [1997]; *Pramdip v Building Serv. 32B-J Health*

*Fund*, 308 AD2d 523 [2003]). "To prevail on their summary judgment motion, [the] defendants must demonstrate either [the] plaintiff's failure to establish every element of intentional discrimination, or, having offered legitimate, nondiscriminatory reasons for their challenged actions, the absence of a material issue of fact as to whether their explanations were pretextual" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]; *see Dzikowski v J.J. Burns & Co., LLC*, 98 AD3d 468, 469 [2012]; *Morse v Cowtan & Tout, Inc.*, 41 AD3d 563, 564 [2007]).

I agree with the majority's conclusion that a plaintiff may demonstrate, prima facie, membership in a protected class by showing that he or she was discriminated against because of a spouse's religion. Here, however, the defendants established their prima facie entitlement to judgment as a matter of law by demonstrating that the plaintiff cannot establish that his discharge occurred under circumstances giving rise to an inference of discrimination. The defendants also demonstrated, prima facie, legitimate, nondiscriminatory reasons for terminating the plaintiff's employment and that there are no material issues of fact as to whether those explanations were pretextual (*see Dzikowski v J.J. Burns & Co., LLC*, 98 AD3d at 469; *King v Brooklyn Sports Club*, 305 AD2d 465, 465-466 [2003]; *see also Oross v Good Samaritan Hosp.*, 300 AD2d 457, 458 [2002] ["the Hospital established its entitlement to judgment as a matter of law on the second cause of action alleging discrimination by submitting evidence demonstrating that the plaintiff was terminated from her job as a result of her misconduct and not as a result of discrimination"]).

In support of their motion, the defendants submitted evidence demonstrating that the plaintiff was terminated from his employment by the Town in March 2007 after having been found guilty of five charges of misconduct or insubordination occurring between January 2005 and May 2006. The defendants' evidence revealed that, following a hearing at which several witnesses testified, a Hearing Officer found that on January 23, 2005, the plaintiff cursed at his superior. In addition, the Hearing Officer found that the plaintiff had missed a mandatory departmental meeting on March 28, 2006, and that when the plaintiff was informed by a superior that he had missed the meeting, he replied, "Aw shucks." The plaintiff was also found to have used sick leave time when he admittedly was not sick, and to have left work without authorization.

Lastly, the Hearing Officer determined that on May 9, 2006, the plaintiff extended his coffee break beyond the permitted time period, and was later observed sitting in a town vehicle for at least 45 minutes while he was supposed to be working. The Hearing Officer recommended that the plaintiff's employment be terminated based on the plaintiff's "bad behavior, poor performance and a lack of commitment," and the Town adopted that recommendation.

Significantly, the plaintiff subsequently commenced a CPLR article 78 proceeding challenging the Town's determination, and this Court confirmed the determination in 2009 (*see Matter of Chiara v Wells*, 61 AD3d 973 [2009]). This Court held that the plaintiff failed to allege sufficient facts to show that the initiation of the disciplinary charges was in retaliation for his commencement of a lawsuit against the Town and the Town Administrator, and, in particular, that the determination that he was guilty of misconduct was supported by substantial evidence in the record (*see id.*). This Court also concluded that the penalty of dismissal was not so disproportionate to the offenses as to be shocking to one's sense of fairness, thus constituting an abuse of discretion as a matter of law (*see id.*).

Contrary to the majority's conclusion, in opposition to the defendants' prima facie showing, the plaintiff failed to raise a triable issue of fact. The plaintiff maintains that his coworker, Michael Molnar, made improper remarks, including anti-Semitic comments, and that the Town condoned such conduct. However, after the Town Administrator learned of the confrontation between Molnar and the plaintiff in May 2002, no adverse action was taken against the plaintiff by the Town. Molnar, on the other hand, received a significant punishment, as he was suspended by the Town for 14 calendar days without pay. Additionally, Molnar was warned that any further misconduct by him involving the use of offensive, threatening, or demeaning language in his interaction with coworkers would result in his immediate termination. Further, Molnar was required to enroll in an anger management counseling program, as well as a diversity training program.

Moreover, and indeed significantly, the plaintiff testified that, as a result of his confrontation with Molnar, all of the employees of the Town were directed to attend sensitivity training. The plaintiff even conceded and acknowledged that the town-wide sensitivity training was aimed, in part, at discouraging people from discriminating on the basis of religion. Importantly,

the plaintiff did not recall any disparaging comments by Molnar regarding the plaintiff or his wife's religious background after 2002. Thus, the record reflects that when the plaintiff reported Molnar's anti-Semitic comments in the course of the Town's investigation into the May 17, 2002 incident, the Town did not punish the plaintiff but instead penalized Molnar. The Town also evidenced a concern for a proper workplace environment for all of its employees by directing all town employees to attend sensitivity training. It is this same Town that the plaintiff now contends reacted to his claim of new inappropriate comments by terminating his employment without proper justification. Notably, however, the charges of misconduct against the plaintiff sustained by the Hearing Officer included verifiable misconduct by the plaintiff, such as falsely calling in sick to work, failure to attend departmental meetings, and leaving work without authorization.

In sum, the plaintiff failed to raise a triable issue of fact as to whether the Town encouraged or condoned improper conduct on the part of Molnar (*see Doe v State of New York*, 89 AD3d 787, 788-789 [2011]). To the contrary, the record reflects that the Town took appropriate remedial measures to address the situation and to prevent discriminatory behavior in the workplace. Although Molnar eventually received a promotion to a supervisory position, he was not promoted by the Town until 2007 or 2008, approximately five to six years after the allegedly discriminatory conduct by Molnar last occurred. Contrary to the plaintiff's contention, Molnar's promotion does not reflect that the Town rewarded or condoned his discriminatory behavior.

Although the plaintiff averred that his supervisors Michael Clifford and John O'Hearn made various improper remarks, these alleged remarks were not directed at the plaintiff or his wife. Additionally, while the plaintiff also maintained that his supervisor Charlie Bergstrom made disparaging remarks about his wife's religion throughout his employment, right up to 2007, this conflicted with the plaintiff's prior testimony that after 1996, Bergstrom "backed off" and his remarks were "few and far between." The plaintiff failed to demonstrate any causal relationship between the alleged remarks and his termination

> "that could conceivably demonstrate that the termination occurred under circumstances giving rise to an inference of discrimination (*see Price Waterhouse v Hopkins*, 490 US 228, 277 [1989]

[O'Connor, J., concurring in judgment] ['statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself,' are insufficient to establish discriminatory intent])" (*Forrest v Jewish Guild for the Blind*, 3 NY3d at 308).

Under the circumstances, the plaintiff failed to raise a triable issue of fact as to whether his discharge occurred under circumstances giving rise to an inference of intentional discrimination, or whether the reasons proffered by the Town for his discharge were merely pretextual (*see Morse v Cowtan & Tout, Inc.*, 41 AD3d at 563-564).

The plaintiff's remaining contentions are without merit.

Accordingly, based on the foregoing, I would affirm the order granting the defendants' motion for summary judgment dismissing the complaint in its entirety.

RIVERA, J.P., and HALL, J., concur with LEVENTHAL, J.; ROMAN, J., concurs in part and dissents in part, and votes to affirm the order appealed from, in a separate memorandum.

Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the defendants' motion which was for summary judgment dismissing the cause of action alleging discrimination on the basis of religion in violation of Executive Law § 296, and substituting therefor a provision denying that branch of the defendants' motion; as so modified, the order is affirmed, without costs or disbursements.