Pitter-Green v NYU Langone Med. Ctr. (2024 NY Slip Op 00283)

Pitter-Green v NYU Langone Med. Ctr.

2024 NY Slip Op 00283

Decided on January 23, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 23, 2024

Before: Kern, J.P., Oing, Singh, Kapnick, O'Neill Levy, JJ. 

Index No. 155386/21 Appeal No. 1385 Case No. 2023-00123 

[*1]Memoris Pitter-Green, Plaintiff-Appellant,
v
NYU Langone Medical Center, Defendant-Respondent.

Giskan Solotaroff & Anderson LLP, New York (David O'Brien of counsel), for appellant.
Tarter Krinsky & Drogin LLP, New York (Richard Lane Steer of counsel), for respondent.

Order, Supreme Court, New York County (David B. Cohen, J.), entered on or about December 19, 2022, which granted defendant's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.
Supreme Court correctly dismissed plaintiff's complaint asserting claims for discrimination and hostile work environment under New York State and New York City Human Rights Laws (Executive Law § 296; Administrative Code of City of NY § 8-107). Plaintiff, a Black woman who worked as a phlebotomist in defendant's outpatient lab, contends that factual issues exist as to whether her termination was motivated by discriminatory intent, and cites what she claims are discriminatory remarks by defendant's then-Administrative Director Peter Vargas and Assistant Administrative Director Tony Arceo as evidence of such intent. Plaintiff testified that in 2013 or 2014, she heard Arceo state that "African Americans don't like to work," but acknowledged that this was the only racially discriminatory remark of Arceo's of which she was aware. Plaintiff's termination occurred in August 2010, three or four years before she claims to have heard the remark. As such, this single remark, made three or four years after the adverse employment decision in question, cannot create a triable issue of fact (see Chiara v Town of New Castle, 126 AD3d 111, 124 [2d Dept 2015], lv dismissed 26 NY3d 945 [2015]).
In addition, and given the sizeable temporal gap between the termination decision and Arceo's remark, plaintiff cannot show that factual issues exist as to whether the remark was "related to the decision-making process" to terminate her (Chiara, 126 AD3d at 124). She argues that it can be inferred that Arceo's belief that Black employees "don't like to work" would have "informed the decision to terminate" her, yet her termination (which was reversed, and plaintiff reinstated three months later) was not based on an alleged unwillingness to work but rather concerns about her treatment of patient records. Plaintiff asserts that Vargas's use of the phrase "you people," on an unspecified date also creates an issue of fact as to an inference of discrimination, but her argument misstates the record. Another employee, Niesje Goffe, testified to Vargas's use of the phrase, but further testified that she did not "know what he meant by [it]," and that she "cannot say that [it] was a racist term" (see Kwong v City of New York, 204 AD3d 442, 444 [1st Dept 2022], lv dismissed 38 NY3d 1174 [2022]; see also Lent v City of New York, 209 AD3d 494, 495 [1st Dept 2022], lv dismissed 39 NY3d 1118 [2023]).
Plaintiff's argument that evidence of defendant's overall disparate treatment of Black employees is an independent basis from which the court could have inferred that the decision to terminate her was made with discriminatory intent is unavailing. In making the argument, plaintiff mischaracterizes the record and overstates the disparate treatment evidence proffered. Plaintiff claims [*2]factual issues exist as to defendant's discriminatory intent because "the record reflects that all Black employees working under Vargas and Arceo were treated worse than their Hispanic and Filipino colleagues," and that Vargas and Arceo "discriminated against every Black employee" in the lab. While the record does include deposition testimony of several Black employees who had directly experienced, or were aware of, certain discriminatory practices, plaintiff cites no evidence that shows such practices affected "all" employees or "every" Black employee in the lab.
Plaintiff's claim that, in response to her prima facie showing, defendant failed to articulate a legitimate, nondiscriminatory reason for terminating her is also unavailing. In her response to defendant's statement of undisputed facts, plaintiff admitted that "confidentiality of patient information was considered important" at the lab, and that the "lack of confidentiality of patient information would be considered a compliance issue." Thus, by her own admission, defendant's decision to terminate her on grounds that she jeopardized the confidentiality of patient records by storing them in her locker was a legitimate, nondiscriminatory reason. Her alternative argument that any ostensibly nondiscriminatory ground for her termination was mere pretext is equally unavailing, as she does not adequately address record evidence that her termination followed undisputed oral and written warnings arising from her failure to follow laboratory procedures, some of which were issued when Black women held managerial and supervisory positions in the lab (e.g. Cadet-Legros v New York Univ. Hosp. Ctr., 135 AD3d 196, 206-207 [1st Dept 2015]). In addition, plaintiff does not adequately address her own admission that individuals whom she does not claim acted in a discriminatory manner were also involved in the decision to terminate her.
Defendant established entitlement to summary judgment on plaintiff's hostile work environment claims under New York State and City Human Rights Laws. In opposition, plaintiff cites only one offensive remark that was made to her. She further asserts, in a conclusory fashion, that she was denied vacation days and that she was reprimanded for what she summarily characterizes as "minor" errors. In fact, the errors at issue involved such matters as mislabeling patient specimens which prevented medical testing on those samples. Additionally, plaintiff contends that she was monitored while working and that Vargas ignored her in the hallways. Regarding her State hostile work environment claim, plaintiff's showing was insufficient to create an issue of fact as to whether the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment" (Forrest v Jewish Guild for the Blind, 3 NY3d 295, 310 [2004], quoting Harris v Forklift Sys., Inc., 510 US 17[*3], 21 [1993]; see e.g. Chin v New York Hous. Auth., 106 AD3d 443, 444-445 [1st Dept 2013], lv denied 22 NY3d 861 [2014]). Likewise, plaintiff has not shown how the alleged offensive remark or purportedly discriminatory conduct indicative of a hostile work environment amount to more than "petty slights or trivial inconveniences" that would demonstrate she was
treated less well than other employees because of her protected characteristics (Sedhom v SUNY Downstate Med. Ctr., 201 AD3d 536, 538 [1st Dept 2022]; see generally Williams v New York Hous. Auth., 61 AD3d 62, 78-80 [1st Dept 2009], lv denied 13 NY3d 702 [2009]).THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 23, 2024