■ KATHRYN JORDAN, Respondent-Appellant, v BATES ADVERTISING HOLDINGS, INC., Formerly Known as AC & R ADVERTISING, INC., Appellant-Respondent, et al., Defendant. KLEIN ZELMAN ROTHERMEL LLP, Nonparty Intervenor-Respondent. [848 NYS2d 127]—

Amended judgment, Supreme Court, New York County (Rolando T. Acosta, J.), entered January 10, 2007, inter alia, awarding plaintiff damages, after jury trial, on her cause of action for disability discrimination, in the principal amounts of $2,000,000 compensatory and $500,000 punitive, plus attorneys' fees in the principal total of $257,428.71, and imposing a $5,000 sanction against her, and bringing up for review an order, same court and Justice, entered February 27, 2006, which denied the motion by defendant Bates Advertising Holdings, formerly known as AC & R Advertising for judgment notwithstanding the verdict, unanimously modified, on the law, the motion

granted, the verdict set aside, and the judgment insofar as it awarded damages and attorneys' fees vacated, and otherwise affirmed, without costs. The Clerk is directed to enter an amended judgment imposing the sanction and dismissing the complaint.

In this disability discrimination action, plaintiff was hired as a senior vice president by a small New York City advertising agency, AC & R Advertising (AC & R) in January 1994 after working as a consultant for the company since November of the preceding year. Plaintiff's responsibilities included providing strategic planning on AC & R's accounts, in particular on the Foot Locker and Estee Lauder accounts. During the summer of 1994, the company merged with Bates Advertising Holdings, USA, Inc (Bates USA) and changed its name to Bates Advertising Holdings, Inc.[1] Plaintiff was terminated less than a year later in March 1995.

In January 1996, plaintiff brought disability, sex and age discrimination charges before the New York State Division of Human Rights and the Equal Employment Opportunity Commission. Plaintiff then brought a federal action against AC & R and Bates USA, alleging discharge in violation of title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and the New York State and City Human Rights Laws.

On August 9, 1999, the District Court (Rakoff, J.) granted both defendants summary dismissal of the federal claims with prejudice and dismissed the state claims without prejudice. On February 16, 2001, the judgment was affirmed. Meanwhile, on September 8, 1999, plaintiff commenced this action under the State and City Human Rights Laws (Executive Law § 296; Administrative Code of City of NY § 8-107) claiming, inter alia, termination of her employment because she was perceived to be disabled. Plaintiff sought damages for lost wages and emotional distress, punitive damages and attorneys' fees. Defendants moved to dismiss on statute of limitations and collateral estoppel grounds, relying on the federal holding that plaintiff had not presented sufficient evidence to discredit their stated reason for her termination.

By decision dated January 8, 2001, Supreme Court (Louis York, J.) dismissed the action, holding, inter alia, the disability claim untimely. On appeal, this Court reinstated the claim for disability discrimination (*Jordan v Bates Adv. Holdings*, 292 AD2d 205 [2002]).

---

**1.** For clarity, the company will be referred to as AC & R throughout this memorandum.

Subsequently, after a jury trial, the plaintiff was awarded $2 million in economic damages for termination by AC & R on the basis of disability. Defendant AC & R moved for judgment notwithstanding the verdict, remittitur or a new trial. The court denied defendant's motion, rejecting defendant's sufficiency argument. The court found that plaintiff had proved a prima facie case of termination based on perceived disability, and noted that the jury's rejection of the employer's stated legitimate reasons permits an inference of discrimination.

On appeal, defendant does not raise any issue with plaintiff's prima facie case, but maintains that she did not prove that defendant's proffered legitimate reasons were pretextual.

For the reasons set forth below, this Court agrees.

In order to recover under section 296 of the Executive Law, a three part analysis is required to determine whether a plaintiff has met his/her burden in establishing a discrimination claim (*see Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d 265, 270 [2006]). A plaintiff in a discriminatory termination action has the initial burden of establishing a prima facie case of discrimination, the burden then shifts to the defendant to rebut the prima facie case with a legitimate reason, and then again shifts to the plaintiff to show that defendant's reasons are pretextual. The burden of persuasion of the ultimate issue of discrimination always remains with the plaintiff (*id.* at 270-271).

At trial, plaintiff established that she was diagnosed with multiple sclerosis (MS) in 1992. She further testified that she was using a cane as a result of her MS when she was hired by AC & R's executive vice president Douglas Fidoten as a consultant in November 1993. When she was asked about the cane, she said it was due to a skiing injury. In December 1993, she met with AC & R president Steve Bennett and chief operating officer Harry Koenig, who both asked about her use of a cane and again she gave the skiing injury lie. Bennett offered plaintiff a permanent job which included working on the Foot Locker account. She was subsequently made an executive vice president at an annual salary of $125,000.

According to plaintiff, in February-March 1994, Bennett, Koenig and Fidoten repeatedly questioned her about her use of the cane and inquiries about the cane were still being made after August 1994. She felt that they believed she had a disability, and that if she revealed the truth she would be fired. However, she did not complain to anyone at AC & R about the inquiries as to her use of the cane. Plaintiff further testified that, at a rehearsal for a client presentation, Fidoten knocked over her cane

which was leaning on her chair, and laughed with another executive, while commenting sarcastically "we've got a cripple." Plaintiff also did not mention this comment to anyone at the company.

In the summer of 1994, AC & R merged with Bates, its parent company. Plaintiff testified that, in December 1994 Fidoten told her that AC & R cannot "afford everyone." She was never reviewed or evaluated, but by the beginning of 1995, plaintiff had been relieved of her responsibilities on the Estee Lauder account. She was subsequently told that she was being terminated effective March 1995.

Both Bennett and Fidoten, as well as other agency executives, testified that plaintiff's termination was financially motivated, and that a merger and the loss of major clients had precipitated layoffs of a large portion of the workforce, including executives more highly placed than plaintiff.

Bates's former chief financial officer, Art D'Angelo testified that as a result of the Bates-AC & R merger, approximately half of the staff at AC & R was terminated. D'Angelo believed that Fidoten had terminated plaintiff as a cost cutting measure since account planning activities at Bates and AC & R were duplicative. He testified that in late 1994-early 1995, the parent of both Bates and AC & R, Saatchi & Saatchi, had lost major accounts when Saatchi's founders left. This required restructuring the Bates worldwide network and making personnel cuts as a way of cutting costs.

Bates's personnel manager, Anne Melanson, testified that there were many layoffs for budget reasons. While it was customary to try to transfer people to related entities, this was not possible because during 1994 both of AC & R's corporate parents (Saatchi and Bates) were losing business.

Fidoten testified that around the time plaintiff was terminated one of AC & R's biggest accounts, Estee Lauder, was looking at other agencies, an action which threatened AC & R's viability. He further testified that many jobs were eliminated to avoid duplication when AC & R was merged with Bates. They included senior executives at AC & R such as Koenig, a vice chairman and its chief operating officer, and an executive vice president, Shelly Marks. Fidoten acknowledged that he had decided to terminate plaintiff on the grounds that she was one of the most expensive employees and Bates already had many others performing her planning function. Fidoten further testified that plaintiff was not replaced. Instead, AC & R provided services to Footlocker by using Bates's staff.

The defendant's overwhelming and consistent evidence of

financial reasons for layoffs in the light of the merger and the loss of major client accounts was undisputed. Thus, the finding that defendant failed to demonstrate a legitimate reason for terminating plaintiff was against the weight of the evidence.

Moreover, plaintiff presented no evidence of pretext, and so failed to controvert defendant's evidence of a legitimate nondiscriminatory reason for her termination. On the contrary, plaintiff acknowledged that the merger in 1994 caused many layoffs for economic reasons. She admitted that when she was terminated, Estee Lauder, a major account she worked on, was considering taking its business elsewhere, and that AC & R was facing financial pressures.[2]

Further, in plaintiff's separation memo in February 1995 in which she sought references and help with networking, she wrote: "For the purposes of outside communication, I think the elimination of my position as part of the Bates USA AC & R integration would be sufficient."

Additionally, while plaintiff elicited evidence from Fidoten that a nondisabled woman in her late 20s to mid 30s, Jill Kosoff, was hired in November 1994 and put to work on the Footlocker account, performing the planning function that plaintiff had performed, there was no testimony as to the employee's salary. By failing to come forth with any evidence that hiring Ms. Kosoff was just as expensive, or that hiring her and also using Bates' personnel was just as expensive as keeping plaintiff employed, plaintiff failed to meet her burden as a matter of law.

Thus, because there was no evidence to rebut defendant's showing of a legitimate reason for the termination, we find that no jury could have reached the verdict in this case on any fair interpretation of the evidence. Therefore, the verdict was against the weight of the evidence (see *White v New York City Tr. Auth.*, 40 AD3d 297 [2007]). Since it was plaintiff's ultimate burden to prove discrimination and also her burden to prove that the proffered legitimate reason for her termination was pretextual, we find that the motion to set aside the verdict should have been granted. Further, inasmuch as plaintiff, as a result of our decision, is no longer the prevailing party, she is not entitled to any award of attorneys' fees (*see McGrath v Toys "R" Us, Inc.*, 3 NY3d 421, 429 [2004]). It is thus unnecessary to reach plaintiff's contentions regarding such fees.

Finally, the imposition of a sanction of $5,000 on the plaintiff

---

**2.** In a separate action against a former employer, she had also testified that the reason for her termination by AC & R was "they had layoffs. They lost big accounts."

was a proper exercise of discretion. Plaintiff's conduct after the court directed a hearing to determine the amount of attorneys' fees was egregious and repeated. The record shows that plaintiff pro se relentlessly bombarded the court with letters and faxes accusing the court of ex parte communications, declaring her intention to depose the court, and claiming that her now-former trial attorney had committed serious errors costing her millions in damages.[3] Although the court recognized that plaintiff was proceeding pro se after trial, it properly observed that she was nevertheless obliged to comply with court orders and not make baseless accusations regarding the court's integrity. Concur—Lippman, P.J., Friedman, Sullivan, Gonzalez and Catterson, JJ.

---

**3.** Plaintiff's numerous letters to the court between March and August 2006 resulted in two major admonitions of her by the court. On April 19 2006, the court **ordered** her (boldface in the letter) not to contact the court or its staff except as to issues pending before it, and directed that as to those issues she must copy defendants. However, plaintiff's relentless letter-writing continued until in open court on June 29, the judge repeated that he did not want *any* further communication with the court until a decision was rendered ("zero communication . . . not a letter from your doctor or a proposal to submit a letter . . . I beg you to just leave me alone.").

The court's clear statement notwithstanding, by letter dated July 18, 2006, plaintiff again accused Justice Acosta of ex parte communications (a "shameful charade . . . while you looked the other way"), complained of the delay in deciding the fee matter, and asked that he transfer it to another judge. On August 12, 2006, plaintiff moved to "recall" the court's decision, recapping her letter accusations; moved, using strong language, for Justice Acosta's recusal on the fee matter on the ground of bias; and sought administrative relief from another Justice whereupon the court sanctioned plaintiff, chronicling plaintiff's communications especially the July 18, 2006 letter.