6115 Niagara Falls Blvd., LLC v Calamar Constr. Mgt., Inc. (2021 NY Slip Op 02707)





6115 Niagara Falls Blvd., LLC v Calamar Constr. Mgt., Inc.


2021 NY Slip Op 02707


Decided on April 30, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 30, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, NEMOYER, WINSLOW, AND DEJOSEPH, JJ.


1257 CA 20-00030

[*1]6115 NIAGARA FALLS BOULEVARD, LLC, PLAINTIFF-APPELLANT-RESPONDENT,
v
CALAMAR CONSTRUCTION MANAGEMENT, INC., DEFENDANT-RESPONDENT-APPELLANT. (APPEAL NO. 1.) 






DUKE, HOLZMAN, PHOTIADIS & GRESENS LLP, BUFFALO (ELIZABETH A. KRAENGEL OF COUNSEL), FOR PLAINTIFF-APPELLANT-RESPONDENT.
SARAH K. HYMAN, WHEATFIELD, FOR DEFENDANT-RESPONDENT-APPELLANT. 


 Appeal and cross appeal from an order of the Supreme Court, Niagara County (Timothy J. Walker, A.J.), entered December 13, 2019. The order, among other things, granted that part of plaintiff's motion seeking to enforce the stipulation of settlement and settlement agreement and denied that part of plaintiff's motion seeking attorneys' fees, costs and disbursements. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by denying in its entirety plaintiff's motion to enforce the stipulation of settlement and settlement agreement and rescinding the stipulation of settlement and settlement agreement, and as modified the order is affirmed without costs.
Memorandum: Plaintiff, a property owner, contracted with defendant as the general contractor on a construction project. After plaintiff commenced an action against defendant for breach of contract, the parties entered settlement discussions and thereafter ostensibly reached an agreement that was memorialized by an oral stipulation of settlement in court (stipulation) and a written settlement agreement (settlement) (collectively, agreement). A dispute subsequently arose with respect to the meaning of the terms of the agreement. Plaintiff asserted that a credit or reimbursement of approximately $97,000 included in the stipulation and settlement constituted a separate payment that defendant was required to pay in addition to the separately-identified lump sum payment of $150,000. Defendant, conversely, asserted that the approximately $97,000 was not a separate payment due to plaintiff, but instead merely represented a credit or reimbursement that was to be reflected in the final payment application for the construction project.
Plaintiff moved to enforce the stipulation and settlement, and also sought attorneys' fees, costs, and disbursements pursuant to the agreement. Upon consideration of the parties' submissions and after hearing oral argument, Supreme Court determined, inter alia, that defendant had failed to establish a mutual mistake that would warrant setting aside the stipulation and settlement. In appeal No. 1, defendant cross-appeals from an order insofar as it granted that part of plaintiff's motion seeking to enforce the stipulation and settlement, and plaintiff appeals from the order insofar as it denied that part of its motion seeking attorneys' fees, costs, and disbursements. Following entry of the order in appeal No. 1, plaintiff moved for various relief related to payment under the agreement. In appeal No. 2, plaintiff appeals from an order insofar as it denied that part of its motion seeking attorneys' fees, costs, and disbursements.
Defendant contends in appeal No. 1 that the court erred in enforcing the stipulation and settlement because there was no meeting of the minds whether the approximately $97,000 credit or reimbursement constituted a separate amount payable to plaintiff or, instead, merely showed how that amount would be allocated in the final payment application. Initially, we reject [*2]plaintiff's assertion that defendant's contention is improperly raised for the first time on appeal. Defendant specifically contended before the court that, if plaintiff truly believed that it was entitled to more than the $150,000 lump sum payment, which was different than the understanding had by defendant, then "there was no meeting of the minds" and the agreement should be set aside. On the merits, we agree with defendant for the reasons that follow.
"To form a binding contract there must be a 'meeting of the minds' . . . , such that there is 'a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms' " (Stonehill Capital Mgt. LLC v Bank of the W., 28 NY3d 439, 448 [2016]; see Gupta v University of Rochester, 57 AD2d 731, 731 [4th Dept 1977]). "Where the offeror, using ambiguous language, reasonably means one thing and the offeree reasonably understands differently, there is no contract" (Gupta, 57 AD2d at 731; see Computer Assoc. Intl., Inc. v U.S. Balloon Mfg. Co., Inc., 10 AD3d 699, 700 [2d Dept 2004]). Ambiguity in an agreement arises "when specific language is 'susceptible of two reasonable interpretations' " (Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014]; see Universal Am. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 25 NY3d 675, 680 [2015]; Chimart Assoc. v Paul, 66 NY2d 570, 573 [1986]). Conversely, an agreement "is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion' " (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). "Whether an agreement is ambiguous is a question of law for the courts" (Kass v Kass, 91 NY2d 554, 566 [1998]; see Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d 398, 404 [2009]).
Here, we conclude that the language in the stipulation and settlement regarding the nature of the approximately $97,000 is ambiguous inasmuch as it is susceptible of more than one reasonable interpretation. With respect to the stipulation made in open court and stenographically recorded, which "is governed by general contract principles for its interpretation and effect" (Carr v Sheehan, 148 AD3d 1618, 1619 [4th Dept 2017] [internal quotation marks omitted]), plaintiff's counsel first stated that the parties had "agreed to a payment in the amount of [$150,000] from [defendant] to [plaintiff]" and then, after explaining how that payment would be made through the final payment application process and some additional terms, further stated that, "[i]n addition, certain credits to [plaintiff] under the contract shall issue in the amount of [approximately $97,000]." As defendant contends, unlike the language used to describe the lump sum payment, plaintiff's counsel never characterized the approximately $97,000 as a separate "payment" or that it would be paid to plaintiff through the final payment application process; instead, plaintiff's counsel referred to the approximately $97,000 as a "credit" to plaintiff (compare Black's Law Dictionary [11th ed 2019], payment, with Black's Law Dictionary [11th ed 2019], credit). Moreover, it has been defendant's position that it did not object to that part of the stipulation as articulated in court because, as defendant's counsel understood, the use of the "[i]n addition" phrase by plaintiff's counsel simply conveyed that there was more to the agreement, one component of which was that certain credits would be accounted for in the final payment application, but that no separate payment beyond the $150,000 lump sum was owed to plaintiff. Given the discrepant and ambiguous language used by plaintiff's counsel in articulating the lump sum payment and the credit, we conclude that defendant's interpretation of the stipulation was reasonable.
We also agree with defendant that the settlement, which notably uses language that is markedly different from the stipulation, is likewise ambiguous. The paragraph of the settlement addressing the lump sum provided that "[defendant] shall cause to be paid to [plaintiff] . . . in full and final satisfaction and settlement of any and all claims between the [p]arties as set forth herein, the lump sum of $150,000[ ]." That paragraph further described the manner in which the lump sum would be paid. The paragraph of the settlement addressing the approximately $97,000 provided that "[plaintiff] shall receive reimbursement from [defendant] in the amount of $97,475.46 as included in the Final Payment Application." In our view, it is unclear whether that "reimbursement," which was previously called a "credit" in the stipulation, was intended to be a separate payment owed to plaintiff, or if it simply represented how such amount would be accounted for in the final payment application. Indeed, the lump sum "payment" was "in full and final satisfaction and settlement of any and all claims between the [p]arties as set forth herein" and, as defendant has asserted, the paragraph describing the "reimbursement" contained no language suggesting that the approximately $97,000 represented a payment in addition to the [*3]lump sum settlement amount.
Given that ambiguity, "[e]xtrinsic evidence of the parties' intent may be considered" (Greenfield, 98 NY2d at 569). Here, during the drafting phrase of the settlement a couple weeks after the stipulation was placed on the record in court, plaintiff originally included language stating that the "reimbursement" was "[i]n addition to the Settlement Amount." In an email, defendant's counsel informed plaintiff's counsel that defendant would "not agree to the language '[i]n addition to the Settlement Amount[ ]' " because such language "implies a 'plus/plus' "—i.e., requiring payment by defendant of both the $150,000 lump sum and the approximately $97,000—which defendant's counsel did not believe was plaintiff's intent. Defendant's counsel expressed her opinion that the change orders and reimbursement were really not "[i]n addition to" the lump sum settlement amount; rather, these items were incorporated by reference in the final payment application. In direct response to the request of defendant's counsel, the "in addition" language was removed and not included in the settlement as signed by the parties. Plaintiff's counsel was therefore aware of defendant's interpretation at the time that the settlement was drafted. Plaintiff's counsel later explained at oral argument that she had agreed to strike the "in addition" language from the written settlement because she knew that the stipulation would be attached. As previously discussed, however, the language used in the stipulation was also ambiguous with respect to the nature of the approximately $97,000. Additionally, defendant submitted the affidavit of its executive vice president of construction and development, who averred that the parties had agreed to a lump sum payment of $150,000 only, and that the inclusion of itemized amounts other than the lump sum payment was merely the result of a short discussion just prior to the stipulation in which plaintiff's representative indicated that such itemization would be helpful to plaintiff's relationship with its lending institution.
Based on the foregoing, the record demonstrates that defendant reasonably thought that it was settling all claims for a total of $150,000 only, whereas plaintiff reasonably thought that it would separately receive from defendant a payment of $97,000 in addition to the lump sum payment (see Gessin Elec. Contrs., Inc. v 95 Wall Assoc., LLC, 74 AD3d 516, 516-520 [1st Dept 2010]). "There is a reasonable basis for the parties' difference of opinion as to what the [agreement] included or did not include, and therefore the [agreement] is unenforceable for lack of a meeting of the minds regarding a material element thereof" (Computer Assoc. Intl., Inc., 10 AD3d at 700). Under the circumstances here, we conclude that denial of plaintiff's motion in its entirety and rescission of the stipulation and settlement is the appropriate relief (see generally County of Orange v Grier, 30 AD3d 556, 556-557 [2d Dept 2006]). We therefore modify the order in appeal No. 1 accordingly.
Contrary to plaintiff's contention on its appeal in appeal No. 1, inasmuch as it is no longer the prevailing party as a result of our decision, it is not entitled to attorneys' fees, costs, and disbursements (see Jordan v Bates Adv. Holdings, Inc., 46 AD3d 440, 444 [1st Dept 2007], lv denied 11 NY3d 701 [2008], rearg denied 11 NY3d 817 [2008]). Finally, contrary to plaintiff's contention in appeal No. 2, we conclude that the court properly denied that part of its motion seeking attorneys' fees, costs, and disbursements (see Cayre v Pinelli, 172 AD3d 611, 611 [1st Dept 2019]; Chainani v
Lucchino, 94 AD3d 1492, 1494 [4th Dept 2012]).
Entered: April 30, 2021
Mark W. Bennett
Clerk of the Court