## Matter of Simmons v City of New York

### 2024 NY Slip Op 33625(U)

October 7, 2024

Supreme Court, New York County

Docket Number: Index No. 161035/2023

Judge: Leslie A. Stroth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:** <u>**HON. LESLIE A. STROTH**</u> | **PART**      **12M** |

*Justice*

-------------------------------------------------------------------------X

IN THE MATTER OF THE APPLICATION OF SHARDESE SIMMONS, FOR A JUDGMENT PURSUANT TO ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES,

Plaintiff,

- v -

THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF CORRECTION

Defendant.

-------------------------------------------------------------------------X

**INDEX NO.**     <u>161035/2023</u>

**MOTION DATE**     <u>02/05/2024</u>

**MOTION SEQ. NO.**     <u>001 002</u>

## DECISION + ORDER ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 20, 30
were read on this motion to/for          <u>ARTICLE 78 (BODY OR OFFICER)</u> .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 32, 33
were read on this motion to/for          <u>DISMISS</u> .

Petitioner Shardese Simmons commenced this article 78 proceeding against respondents The New York City Department of Correction (DOC) and The City of New York alleging violations of the New York City Human Rights Law (NYCHRL) and a Settlement Agreement. Petitioner was hired as a correction officer on October 30, 2014 and terminated on July 11, 2023.

Prior to her termination, Ms. Simmons worked for a limited probationary period pursuant to a Settlement Agreement to resolve disciplinary charges effected by DOC against her on June 30, 2022, which were composed of a Negotiated Plea Agreement (Exh 1) and a Probation Agreement (Exh 2). Under the Probation Agreement, Ms. Simmons accepted a negotiated plea as follows: "[l]imited probation for a period of eighteen (18) months, limited to violations of time and leave rules, regulations, directives, and laws" (Id.). Petitioner argues that DOC can invoke termination only for time and leave violations, and that petitioner did not waive her rights under

[* 1]

the NYCHRL, which prohibits termination based on disability and requires respondent DOC to engage in a "cooperative dialogue" and provide reasonable accommodation.

Petitioner provided a Memorandum dated June 21, 2023 (Exh 4) and a Personnel Determination Review (PDR) dated July 3, 2023 (Exh 5) pertaining to her termination of employment with DOC. The Memorandum stated that Ms. Simmons agreed as follows:

> [F]orfeit 18 (Eighteen) compensatory/vacation days and 1 (one) year limited probation, limited to violations of time and leave rules, regulations, directives and/or policies. However, on the dates listed below Officer Simmons failed to report to duty for the following reasons (Exh 4):

| LEAVE WITHOUT PAY | SICK LEAVE |
|---|---|
| October 18, 2022 | August 18, 2022 |
| October 20-21, 2022 | October 11-12, 2022 |
| February 08-09, 2023 | December 30 - January 01, 2023 |
| | February 27, 2023 |
| | March 14, 2023 |
| | March 20-24, 2023 |
| | March 26-30, 2023 |
| | April 1-8, 2023 |
| | April 8-15, 2023 |
| | April 15-22, 2023 |
| | April 22-29, 2023 |

Please be advised, Shardese Simmons, Correction Officer is from the October 30, 2014 class and has been on Leave Without Pay and Sick Leave for (35) thirty-five days since signing the negotiated plea agreement.

According to the PDR, "The Robert N. Davoren Center (RNDC) is requesting termination for Correction Officer Shardese Simmons #5242, for violation of a negotiated plea agreement. On June 30, 2022 C.O. Simmons entered into a NPA with the Department of Correction, under settlement DR#2131/2021 stipulating C.O. Simmons serve a limited probation for a period of 1 year limited to time and leave violations. Since her NPA C.O. Simmons has be[en] out on sick leave and annual leave. While on a NPA agreement C.O. Simmons has been out 99 days as follows: Sick (48 days), A/L (15 days), FMLA (8 days), MMR (26 days) & LWOP (2 days)" (Exh 5).

161035/2023  IN THE MATTER OF THE APPLICATION OF SHARDESE SIMMONS, FOR A
JUDGMENT PURSUANT TO ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES vs. THE
CITY OF NEW YORK ET AL
Motion No. 001 002

Page 2 of 11

[* 2]

2 of 11

*    *    *

Petitioner moves here to annul her termination, reinstate her employment with DOC, and be granted back pay, plus interest, and benefits as a correction officer (Motion #001). Petitioner alleges that DOC equated five "Leave Without Pay" (LWOP) days to "Absent Without Leave" (AWOL), although she was never AWOL during her limited probation.[1] According to petitioner, "Leave Request Reports" provide five days for LWOP: October 18, 2022 (1 hour and 21 minutes), October 20, 21, 2022 and February 8, 2023 (full work shift), and February 9, 2023, all of which were marked as "Approved Final" (Exh 6). Thus, petitioner's LWOP was authorized and there is no "time and leave" violation under the settlement agreement that would provide a basis for termination by DOC. Petitioner also argues that the February 9th LWOP was correctly marked as FMLA, and that DOC violated FMLA when using the date for termination.[2]

Plaintiff alleges that she was diagnosed with a pinched nerve and that a laminectomy was recommended by a doctor due to back injuries sustained from a car accident that occurred on August 10, 2020. The laminectomy was performed on March 13, 2023. The following timeline was provided by petitioner:

*March 15 and 16, 2023, petitioner called out sick to DOC's Health Management Division ("HMD"), informing them of the surgery and her inability to work.

*March 17 and 18, 2023, petitioner used previously approved FMLA leave for a separate condition. March 21, 2023, petitioner returned to work and was then on sick leave due to difficulty standing up and throwing up.

*March 22, 2023, HMD called petitioner at home to give her an appointment for March 28, 2023 to report to HMD with a letter from her doctor.

*March 28, 2023, petitioner's surgeon completed a report for HMD and recommended that she "rest and recover from surgery at home" and return to light work duties on May 13, 2023 (Exh 7).

---

[1] Petitioner states that AWOL is unauthorized absence and LWOP is approved, unpaid leave.

[2] The petition indicates that the amount of sick leave and LWOP days in the Memorandum and PDR are not identical, and that it will address 48 sick days and five LWOP days as DOC's reason for termination.

**161035/2023  IN THE MATTER OF THE APPLICATION OF SHARDESE SIMMONS, FOR A JUDGMENT PURSUANT TO ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES vs. THE CITY OF NEW YORK ET AL**
**Motion No. 001 002**

Page 3 of 11

[* 3]

*March 28, 2023, petitioner saw Dr. Albert Strojan at HMD who continued her on sick leave and scheduled her to return to HMD on April 4, 2023.

*April 4, 2023, Dr. Strojan continued her on the sick list and scheduled her to revisit HMD on April 20, 2023 (Exh 8).

*April 20, 2023, Dr. Strojan evaluated petitioner and continued her on the sick list with a date to return to HMD on May 3, 2023 (Exh 9).

*April 21, 2023, petitioner's surgeon Dr. Elie Levine completed a report for HMD and indicated that petitioner "may return to work on 5.21.2023 with light duties, minimal inmate contact, no lifting or pushing over 10 lbs" (Exh 10). Dr. Levine also drafted a letter stating that she "may return to work on full duty on 7/31/2023" (Exh 11).

*May 3, 2023, petitioner provided Dr. Levine's return to work recommendations during the HMD appointment.

*HMD scheduled her to revisit on June 21, 2023 (Exh 12).

*Petitioner reported to HMD on June 21, 2023. However, Dr. Strojan was not present and a staff member scheduled her to revisit on July 19, 2023 with Dr. Strojan. HMD continued her on light duty (Exh 13).

Petitioner relies upon New York City Administrative Code §8-107(1)(a) in arguing that her back surgery on March 13, 2023 to remedy an impairment of her musculoskeletal system is a disability under §8-102(16). HMD followed up on petitioner's sick leave and was aware that her sick absences were related to her surgery.

Petitioner also alleges that DOC violated §8-107(15)(a) and §8-107(28)(a) by failing to precede its termination decision on July 11, 2023 with any cooperative dialogue of her being on light duty until July 31, 2023, which is the date her physician recommended that she return to work on full duty. In addition, DOC failed to provide reasonable accommodation, such as by terminating her employment instead of continuing her on light duty performance. Petitioner required eight additional days of light duty until her HMD appointment on July 19, 2023.

Finally, petitioner claims that her sick leave was not a "time and leave" violation under DOC's sick policy and is insufficient to warrant her termination under the Settlement Agreement. According to petitioner, there were 43 sick days related to her disability, leaving five sick days. Petitioner cites DOC Directive 2258R-A, "Absence Control/Uniformed Sick Leave

161035/2023 IN THE MATTER OF THE APPLICATION OF SHARDESE SIMMONS, FOR A JUDGMENT PURSUANT TO ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES vs. THE CITY OF NEW YORK ET AL
Motion No. 001 002

Page 4 of 11

4 of 11

[* 4]

Policy", in stating that the 43 days cannot be the source for her termination and that the remaining five days are not in such termination criteria. Further, petitioner states that DOC cannot base petitioner's termination on lateness.

*     *     *

Respondents move to dismiss the petition, pursuant to CPLR §3211(a)(1), (4) and (7), on the following grounds: 1) petitioner's claims are time-barred; 2) there is a pendency of a prior proceeding between the parties; 3) petitioner failed to present evidence showing DOC acted in bad faith; 4) petitioner failed to state a plausible termination based on disability claim under SHRL and CHRL; and 5) respondents' determination was neither arbitrary nor capricious (Motion #002).

On December 16, 2021, petitioner was charged due to a "pattern of excessive absence and being unable to perform the full range of duties of her position as a correction officer by reporting sick on approximately ninety (90) days, demonstrating an excessive use of sick leave and/or an inability/medical incompetence to perform her duties as a correction officer" (Exh B). Respondents argue that from February 28, 2023 through May 20, 2023, petitioner reported sick for 48 days. Since petitioner's probationary period began, she failed to arrive to work for 99 days - - 48 sick days, 15 annual leave days, 8 days of family leave, and 2 days of leave without pay. Respondents allege that petitioner failed to submit proof of her back surgery and that she received cosmetic surgery of liposuction 360° of the arms, inner thighs, and knees on March 13, 2023, the date of her laminectomy (Exh D, p 62-64, 67, 128-130). Petitioner failed to demonstrate how her back injuries or pain impacted any ability.

Next, respondents rely on CPLR 217, in that a proceeding under Article 78 "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner." An administrative determination becomes final and binding on the

161035/2023  IN THE MATTER OF THE APPLICATION OF SHARDESE SIMMONS, FOR A
JUDGMENT PURSUANT TO ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES vs. THE
CITY OF NEW YORK ET AL
Motion No. 001 002

Page 5 of 11

[* 5]

date that "the petitioner has received notice of the determination and is aggrieved by it." (*Robertson v. Bd. of Educ.*, 175 AD2d 836 (2nd Dept 1991)). DOC notified petitioner of her termination on July 11, 2023, which is when its determination became final and binding. Petitioner had until November 8, 2023 to commence the instant proceeding, and did so on November 9, 2023. Respondent also argues that petitioner filed a complaint on August 4, 2023, seeking compensatory damages for emotional distress based on respondents' alleged discrimination, and that damages overlap with the instant article 78 proceeding seeking reinstatement and back pay against respondents.

Respondents also argue that petitioner failed to show that her termination was done in bad faith (*Witherspoon v. Horn*, 19 AD3d 250 (1st Dept 2005) and substantiate any claims regarding disability. Instead, respondents terminated petitioner based on violation of time and leave rules. First, Ms. Simmons reported sick for 48 days between February 28, 2023 and May 20, 2023, which were over the 40 days of absence in a calendar year. In addition, petitioner's injury did not relate to a line of duty incident or result from hospitalization, and her sick leave during those 40 days was an outcome of her elective liposuction, not a back injury and pinched nerve. Petitioner did not provide any medical documentation to support her absences.

Respondents also state that petitioner pled a legal conclusion without factual support and failed to establish a prima facie case of disability, identify such disability, and assert a plausible connection between the disability and termination. As to a duty to engage in a cooperative dialogue, none exists since petitioner failed to request reasonable accommodation and provide medical evidence to support her disability. Respondents further argue that petitioner did not prove under §8-107(15)(b) that she could not perform her essential job functions without an accommodation. Finally, respondents argue that their determination was not arbitrary or capricious, and that it was rational based on petitioner's failure to report to her appointed place

of duty at the time scheduled, perform the tours of duty scheduled, and having AWOL for more than five consecutive workdays (Memorandum, p 20). Respondents allegedly did not have any knowledge of petitioner's disability.

\*     \*     \*

"CPLR 217 requires an Article 78 proceeding to be commenced within four months after the determination to be reviewed becomes binding and final upon the petitioner. Where, as here, the determination is unambiguous and of certain consequence, the statutory period commences as soon as the aggrieved party is notified" (*Kan v. New York City Env't Control Bd.*, 262 A.D.2d 135 (1st Dept 1999)). Since petitioner was notified of her termination on July 11, 2023, the Court finds that the statute of limitations to commence this proceeding is November 11, 2023, and that petitioner timely filed her petition on November 9, 2023.

Next, "[u]nder CPLR 3211(a)(4), a court has broad discretion in determining whether an action should be dismissed based upon another pending action where there is a substantial identity of the parties, the two actions are sufficiently similar, and the relief sought is substantially the same. It is not necessary that the precise legal theories presented in the first action also be presented in the second action so long as the relief ... is the same or substantially the same" (*Jaber v. Elayyan*, 168 AD3d 693 (2nd Dept 2019)). The Court is unpersuaded by respondents' argument that the relief sought in this matter is substantially the same as that in the August 4, 2023 action since it seeks compensatory damages and punitive damages for emotional distress in the amount of $1,000,000.00, unlike the instant proceeding where petitioner moves to annul her termination (Exh E).

Nonetheless, the Court is denying the petition in its entirety and granting respondents' motion to dismiss. Judicial review of an administrative determination is limited to whether the determination was made "in violation of lawful procedure, was affected by an error of law or

**161035/2023 IN THE MATTER OF THE APPLICATION OF SHARDESE SIMMONS, FOR A**     **Page 7 of 11**
**JUDGMENT PURSUANT TO ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES vs. THE**
**CITY OF NEW YORK ET AL**
**Motion No. 001 002**

[* 7]

7 of 11

was arbitrary and capricious or an abuse of discretion…" CPLR 7803(3). In *Matter of Pell v Board of Educ.* (34 NY2d 222, 231 [1974]), the Court of Appeals held that an action is "arbitrary and capricious" when it is "…without sound basis in reason and is generally taken without regard to the facts." "In reviewing an administrative agency determination, [courts] must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious" (*McCollum v. City of New York*, 184 AD3d 838 (2nd Dept 2020)).

For a plaintiff to succeed on a claim for discrimination under both the NYSHRL and NYCHRL, a plaintiff must prove that: (1) they are members of a protected class; (2) they are qualified to hold the position; (3) they suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination (*See Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d 265 (2006); *see also Forrest v Jewish Guild for the Blind*, 3 NY3d 295 (2004)).

After establishing its prima facie case, "the burden then shifts to the defendant to rebut plaintiffs' prima facie case of discrimination with a legitimate reason for the firing [upon which showing] the plaintiffs must show by a preponderance of the evidence that defendant's reasons are pretextual" (*Stephenson*, 6 NY3d at 271). The City HRL applies a more lenient standard, wherein the plaintiff needs to "only show she was treated differently from others in a way that was more than trivial, insubstantial, or petty" (*Dimitracopoulos v City of New York*, 26 F Supp 3d 200 (ED NY 2014)). However, the City HRL is not a "general civility code," and a plaintiff must still show "that the conduct is caused by a discriminatory motive" (*See Mihalik v Credit Agricole Cheuvreux N. Am., Inc.*, 715 F 3d 102 (2d Cir 2013)).

Here, petitioner failed to demonstrate that termination was caused by Ms. Simmon's disability. "[I]n order to state a cause of action for disability discrimination under the State HRL, the complaint must allege that the plaintiff suffers a disability and that the disability caused the

**161035/2023  IN THE MATTER OF THE APPLICATION OF SHARDESE SIMMONS, FOR A**          Page 8 of 11
**JUDGMENT PURSUANT TO ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES vs. THE**
**CITY OF NEW YORK ET AL**
**Motion No.  001 002**

behavior for which the individual was terminated" (*Vig v. New York Hairspray Co., L.P.*, 67 A.D.3d 140 (1st Dept 2009); *see* New York City Administrative Code §8-107(1)(a)(3)). Petitioner relies upon *Vig*, 67 A.D.3d 140, in arguing that termination based on disability-related absences is similar to such due to disability. However, in *Vig*, "[d]efendant's stated reason for terminating plaintiff was directly related to his disability, or defendant's perception that he was disabled, i.e., that he was not eligible for the medical leave he had taken following his surgery" (Id.). Such is not the case here where petitioner failed to provide any specific facts in the petition to demonstrate that respondents terminated her based on disability.

The Court further finds that respondents' determination had a rational basis and was not arbitrary or capricious in that they established that petitioner's termination resulted in violations of the following:

> Rules and Regulations 3.05.100: Members of the Department shall report to their appointed place of duty at the time scheduled.
>
> Rules and Regulations 3.05.110: Members of the Department shall perform the tours of duty scheduled by the Commanding Officer.
>
> Rules and Regulations 3.10.250: When a member of the uniformed force has been absent without leave for five (5) consecutive workdays the Commanding Officer shall forward a written memorandum of Complaint to the Commissioner in conformity with Rule 3.40.030 (Exh 4).

Petitioner avers that respondents failed to engage in cooperative dialogue and provide reasonable accommodation. Under New York City Administrative Code §8-107(15), "It is an unlawful discriminatory practice for any person prohibited by the provisions of this section from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." Further, §8-107(28)(a) states that "[i]t shall be an unlawful discriminatory practice for an

**161035/2023 IN THE MATTER OF THE APPLICATION OF SHARDESE SIMMONS, FOR A JUDGMENT PURSUANT TO ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES vs. THE CITY OF NEW YORK ET AL**
**Motion No. 001 002**

**Page 9 of 11**

[* 9]

9 of 11

employer…to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation."

However, petitioner "failed to set forth in her [petition] factual allegations sufficient to show that, upon the provision of reasonable accommodations, she could perform the essential functions of her job. She offered instead only conclusory assertions without factual support" (*McKenzie v. Meridian Cap. Grp., LLC*, 35 A.D.3d 676 (2nd Dept 2006)). Petitioner avers that out of the 48 sick days cited by DOC, only 43 are related to disability which leaves five sick days, which is not permitted by DOC Directive 2258R-A, "Absence Control/Uniformed Sick Leave Policy" (Exh 14). Petitioner also claims that respondent failed to provide reasonable accommodation by terminating her instead of continuing her on light duty.

Under Directive 2258R-A(E)(1), "[a] member who reports sick forty (40) or more work days within a twelve (12) month period may be subjected to termination" (Exh 5). As the Court indicated earlier, according to the PDR, "While on a NPA agreement C.O. Simmons has been out 99 days as follows: Sick (48 days), A/L (15 days), FMLA (8 days), MMR (26 days) & LWOP (2 days)" (Id. at p 5). Petitioner notes that Section (F)(5) provides "[b]efore a disciplinary or termination action is commenced, the following mitigating factors shall be considered: The nature of the illness" (Id.). This Court is not convinced. As respondents displayed in their papers, although petitioner alleged that her absence was due to back surgery and a pinch nerve, evidence was submitted that she underwent "cosmetic surgery of liposuction 360 degrees, arms, inner thighs and the knees on March 13, 2023. F/u w/MD 3/21/23. Received post-op instructions from plastic surgery & Dermatology of NYC. 3 pages. HMD appt 4/4/223…" (Exh D, p 128- 131).

The Court notes that Ms. Simmons indicated in her affidavit that "[i]n regard to my surgery on 3/13/23, Dr. Levine performed a laminectomy, as alleged in the Petition, in addition

161035/2023 IN THE MATTER OF THE APPLICATION OF SHARDESE SIMMONS, FOR A JUDGMENT PURSUANT TO ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES vs. THE CITY OF NEW YORK ET AL
Motion No. 001 002

Page 10 of 11

[* 10]

10 of 11

to liposuction. I informed my attorney, Ms. Maldonado, about the laminectomy, but not the liposuction" (para 10). In addition, petitioner failed to submit any medical evidence, which respondents allegedly requested, to support that she indeed had a disability from a laminectomy. Petitioner failed to meet her "burden of showing that respondent[s] acted in bad faith, there being evidence in the record that respondent[s] terminated petitioner" due to her having over 40 days absence in a calendar year (see *Jones v. Sielaff*, 189 AD2d 593 (1st Dept 1993)). The Court finds that petitioner's "record of excessive absence... provided a sufficient basis for her termination" (*Nelson v. Abate*, 205 AD2d 454 (1st Dept 1994)). Thus, the petition is dismissed.

*       *       *

Accordingly, it is hereby

ORDERED, that motion #001 by petitioner, including to annul her termination and reinstate her employment with DOC, is denied in its entirety; and it is further

ORDERED, that motion #002 by respondents to dismiss to petition is granted. The Court is not inclined to grant costs, fees, and disbursements.

The foregoing constitutes the decision and order of the Court.

DATE: 10/7/2024

HON. LESLIE A. STROTH
J.S.C.

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**161035/2023 IN THE MATTER OF THE APPLICATION OF SHARDESE SIMMONS, FOR A JUDGMENT PURSUANT TO ARTICLE 78 OF THE CIVIL PRACTICE LAW AND RULES vs. THE CITY OF NEW YORK ET AL**
**Motion No. 001 002**

Page 11 of 11